**FARM CREDIT BANK OF ST. PAUL, a Body Corporate, Plaintiff and Appellee,**

v.

**Duane E. RUB, Defendant and Appellant.**

**Marlys M. Rub; United States of America, acting through the Farmers Home Administration, United States Department of Agriculture; Nodak Ranch & Home Supply of Lemmon, South Dakota; and Harry Swendsen, d/b/a Hettinger Auto Co., Defendants.**

Civ. Nos. 910227, 910229, 910252 and 910299.

Supreme Court of North Dakota.

Feb. 20, 1992.

Sean O. Smith (argued), of Tschider & Smith, Bismarck, for plaintiff and appellee.

Duane E. Rub, pro se.

LEVINE, Justice.

Duane E. Rub appeals from a judgment foreclosing a real estate mortgage and from an order confirming a sheriff's sale of the foreclosed property. We affirm the judgment and the order.

On January 22, 1979, Duane and Marlys Rub executed a $96,000 promissory note with interest at 8¼% payable to the Farm Credit Bank of St. Paul [FCB][1] and a real estate mortgage securing the note. On January 16, 1984, following their failure to make timely payments, the Rubs reamortized the loan at 11¼% interest. The Rubs defaulted, and on August 24, 1986, FCB sued the Rubs[2] in state district court to foreclose the mortgage. The Rubs answered, asserting that they were not in default, that they were entitled to judicial forbearance under the confiscatory-price defense, Section 28–29–04, et seq., N.D.C.C., and that FCB breached the mortgage agreement. The Rubs also counterclaimed, seeking damages and rescission for FCB's alleged breach of the mortgage agreement.

The court initially set the case for trial on November 12, 1987, but granted a continuance after the Rubs discharged their first attorney. A second trial was scheduled for June 29, 1988, but was rescheduled for August 16, 1988, so the Rubs could appeal from the denial of their proposal to restructure the loan under the Agricultural Credit Act of 1987. The August 16 trial was stayed when the Rubs filed for bankruptcy. After the bankruptcy court lifted the stay for this action, a fourth trial date, scheduled for November 1, 1989, was continued to allow the Rubs an opportunity to obtain an independent appraisal of the property.

A January 10, 1991 trial date was rescheduled for January 17, 1991, after the Rubs filed two separate demands for change of judge. The court denied both demands; however, the Rubs filed a notice of appeal from the court's order, and the January 17 trial was postponed. After this court dismissed the Rubs' interlocutory ap-

---

1. The Rubs initially made the loan with the Federal Land Bank of St. Paul. After this action was commenced, the Federal Land Bank of St. Paul merged with the Federal Intermediate Credit Bank of St. Paul and is now known as the Farm Credit Bank of St. Paul. Section 401(a) of the Agricultural Credit Act of 1987, Pub.L. 100–233, codified at 12 U.S.C. § 2011 et seq. *See Fibelstad v. Grant County*, 474 N.W.2d 54 (N.D. 1991).

2. The complaint also alleged that the United States of America, acting through the Farmers Home Administration of the United States Department of Agriculture [FHA], claimed an interest in the property by virtue of a second mortgage on January 6, 1984; that Nodak Ranch and Home Supply of Linton claimed an interest in the property by virtue of a judgment dated May 23, 1984; and that Harry Swendsen, d/b/a Hettinger Auto Co., claimed an interest in the property by virtue of a judgment dated May 6, 1988.

FCB and FHA stipulated to the entry of judgment in favor of FCB with a one-year period of redemption for FHA. Swendsen answered, alleging that he had a valid judgment lien and was entitled to redemption rights. However, Swendsen did not appear at trial. Nodak Ranch and Home Supply of Linton did not answer or otherwise appear.

peal, a seventh trial date was set for April 18, 1991.

On April 4, 1991, Duane filed a notice of removal with the federal district court under 28 U.S.C.A. § 1446 to remove the case from state court to federal court. The federal court determined that Duane's notice of removal was untimely and remanded the case to state court. The Rubs then filed a third demand for change of judge and the state court granted a continuance. The state court denied that demand for a change of judge and set an eighth trial date for May 16, 1991. On May 10, 1991, the Rubs attempted to appeal to this court from the order denying that demand for a change of judge, and on May 15, 1991, we dismissed the appeal on an expedited basis.

Prior to the trial in state court on May 16, 1991, Duane gave the court a copy of a "Notice of Removal," dated May 15, 1991, which stated that "this notice for removal is brought forth pursuant to Federal Rules of Civil Procedure under 28 USC § 1446 is give [sic] notice to all state Courts and officials." That notice of removal was based on the same ground as the notice of removal filed on April 4, 1991. Duane informed FCB and the state court that the second "Notice of Removal" had been filed with the federal district court that morning. The state court concluded

"that the attempted removal under § 1446 of Title 28 of the US Code is not a timely removal, that the removal has previously been attempted by Mr. Rub on at least two prior occasions, that the United States District Court for the District of North Dakota has on each of said occasions remanded this litigation back to the State District Court finding such attempted removals to be untimely. Accordingly, the Court is not going to honor the Notice of Removal, that the Court is going to proceed with the trial of this litigation on today's date."

After a bench trial, the state court issued a memorandum opinion determining that the Rubs had failed to offer any evidence in support of any of their affirmative defenses or counterclaims and that FCB was entitled to foreclose the real estate mortgage. Judgment was entered and Duane filed notices of appeal from the memorandum opinion and from the judgment.

On July 15, 1991, the federal district court denied Duane's second request for removal, stating:

"The underlying action was filed on August 11, 1986, but no notice of removal was filed until May 16, 1991. The notice of removal must be filed within 30 days of the defendant's receipt of a copy of the initial pleading setting forth the plaintiff's claim. 28 U.S.C. sec. 1446 (1989). Furthermore, all defendants must join in a notice of removal. *Id.* No other defendants have joined. The court's research also indicates that this action has been fully litigated in the state district court, and that defendant is merely asking this court to review the state court's decision. Finally, it appears to the court that even if the above deficiencies could be overlooked, there would be no basis for federal jurisdiction. No amount in controversy is stated, and the parties do not appear to be diverse."

On November 12, 1991, the federal district court denied Duane's motion to reconsider the removal.

Meanwhile, the clerk of the state court issued a notice of special execution sale, and the sheriff conducted a special execution sale on August 19, 1991. Duane filed notices of appeal from those proceedings, and in *Farm Credit Bank of St. Paul v. Rub,* 478 N.W.2d 279 (N.D.1991), we retained jurisdiction and remanded to the state court for consideration of an order confirming the sheriff's sale. The state court has entered an order confirming the sheriff's sale, and we now consider all the issues raised by Duane in the separate appeals.

█ Duane argues that the state court did not have jurisdiction to decide the foreclosure action because, on the day of trial, he notified FCB and the state court that he had filed a notice of removal with the federal district court. FCB responds that the state court never lost jurisdiction because the federal court subsequently concluded

that Duane's notice of removal did not comply with 28 U.S.C.A. § 1446.

■ A defendant seeking to remove a case from state court to federal court under 28 U.S.C.A. § 1446,[3] must (1) file a notice of removal with the appropriate federal court, (2) promptly file a copy of the notice with the clerk of the state court, and (3) promptly give written notice of the removal to all adverse parties. 14A Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3730 (1985); 1A Moore's Federal Practice, ¶ 0.168[3.–1] (1991); Michael J. Kaplan, Annotation, *Effect, On Jurisdiction of State Court, Of 28 USCS § 1446(e), Relating to Removal of Civil Case to Federal Court*, 38 A.L.R.Fed. 824, § 2[a] (1978). The federal court acquires jurisdiction when the defendant files the notice for removal with the federal court, and it has generally been held that the state and federal court both have jurisdiction until the defendant completes the remaining two requirements for removal. 14A Wright, Miller & Cooper, *supra* at § 3737; 1A Moore's Federal Practice, *supra* at ¶ 0.168[3.–8–3]; 38 A.L.R.Fed. 824, *supra* at § 13[a].

Compliance with all three procedural requirements for removal "shall effect the removal and the state court shall proceed no further unless and until the case is remanded." 28 U.S.C.A. § 1446(d). Even if the federal court determines that the case is not removable and remands to state court, it has generally been held that, under 28 U.S.C.A. § 1446(d), any action by the state court while the notice of removal is pending in federal court is void. *E.g.*, *South Carolina v. Moore*, 447 F.2d 1067 (4th Cir.1971); *Hopson v. North American Insurance Co.*, 71 Idaho 461, 233 P.2d 799 (1951); *People v. Martin–Trigona*, 28 Ill. App.3d 605, 328 N.E.2d 362 (1975).

■ Under earlier removal law,[4] if the facts stated in a petition were insufficient

---

3. 28 U.S.C.A. § 1446 provides:

"(a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

"(b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

"If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title [,

diversity of citizenship,] more than 1 year after commencement of the action.

\*   \*   \*   \*   \*   \*

"(d) Promptly after the filing of such petition for the removal of a civil action and bond the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the petition with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded."

4. The prior law, 28 U.S.C.A. § 72, was repealed effective September 1, 1948. It provided:

"Whenever any party entitled to remove any suit mentioned in section 71 of this title, except suits removable on the ground of prejudice or local influence, may desire to remove such suit from a State court to the district court of the United States, he may make and file a petition, duly verified, in such suit in such State court at the time, or any time before the defendant is required by the laws of the State or the rule of the State court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff, for the removal of such suit into the district court to be held in the district where such suit is pending, and shall make and file therewith a bond, with good and sufficient surety, for his or their entering in such district court, within thirty days from the date of filing said petition, a certified copy of the record in such suit, and for paying all costs that may be awarded by the said district court if said district court shall hold that such suit

for removal, the state court could ignore the petition and any action by the state court while the removal was pending in federal court was valid if the federal court subsequently remanded the case. *Metropolitan Casualty Insurance Co. v. Stevens,* 312 U.S. 563, 61 S.Ct. 715, 85 L.Ed. 1044 (1941). There is all but unanimity on the proposition that amendments to the removal statute in 1948 effectively changed the result in *Metropolitan Casualty* so that a state court adjudication, while a removal petition is pending in federal court, is void, even if the federal court subsequently determines that the case is not removable. *E.g., South Carolina v. Moore, supra.*

However, a few courts have concluded that, under current law, a state court decision, while a removal petition is pending in federal court, is not void if the federal court subsequently determines the case is not removable. *Bell v. Burlington Northern Railroad Co.,* 738 P.2d 949 (Okl.Ct. App.), *cert. denied,* 482 U.S. 919, 107 S.Ct. 3197, 96 L.Ed.2d 684 (1986); *see Wilson v. Sandstrom,* 317 So.2d 732 (Fla.1975), *cert. denied,* 423 U.S. 1053, 96 S.Ct. 782, 46 L.Ed.2d 642 (1976); *People v. Wynn,* 73 Mich.App. 713, 253 N.W.2d 123 (1977); *Styers v. Pico, Inc.,* 236 Ga. 258, 223 S.E.2d 656 (1976).

In *Bell, supra,* 738 P.2d at 954–55, the Oklahoma Court of Appeals said that the 1948 amendment to the removal statute indicated no congressional intent to change the approach taken in *Metropolitan Casualty:*

"Looking at the issue from another perspective, that of jurisdiction, one would have to say that if, upon the filing of a petition for removal, the state court ipso facto loses all jurisdiction and it is later determined that the federal court has no jurisdiction then we have the anomalous phenomenon of litigants being cast into a judicial netherland, the existence of an action suspended in a jurisdictionless void, a lawsuit in limbo as it were, where it is possible to remain indefinitely if the federal court chooses not to act. It is reasonable to assume that in enacting § 1446(e) Congress did not intend such a result nor did it intend to provide a defendant with a means of halting a lengthy trial just before the case is to be given to the jury, especially if the attempted removal is frivolous, doubtful, in bad faith, or otherwise improper. For to intend such a result is to unnecessarily impose an onerous burden on both the federal and state judicial systems, promote great waste of state resources, and oppress hapless removal-related litigants by subjecting them to distressing losses of time and money and often deprive parties of justice, all wrought by unwarranted removal delay that can last for months as indeed it did in this case."

In *People v. Wynn,* the court also recognized the possibility of repeated, frivolous attempts to remove a case to federal court. In *Wynn,* the federal court dismissed a defendant's petition for removal of a criminal prosecution to federal court. The defendant thereafter filed a second petition for removal based upon a different ground. While the second petition was pending in federal court, the defendant was convicted by a jury in state court. The Michigan Court of Appeals held that the conviction was void. However, the court specifically noted that the second removal petition was based on a different basis for removal and warned:

"Had the first petition been directed at the identical claim we would have reached a different result. We do not

was wrongfully or improperly removed thereto, and also for their appearing and entering special bail in such suit if special bail was originally requisite therein. It shall then be the duty of the State court to accept said petition and bond and proceed no further in such suit. Written notice of said petition and bond for removal shall be given the adverse party or parties prior to filing the same. The

said copy being entered within said thirty days as aforesaid in said district court of the United States, the parties so removing the said cause shall, within thirty days thereafter, plead, answer, or demur to the declaration or complaint in said cause, and the cause shall then proceed in the same manner as if it had been originally commenced in the said district court."

believe that the legislative intent was to allow a defendant to continually file a petition on the same issue, thereby endlessly delaying his trial. We have no need to face this question here as the defendant's initial petition was premised on a different claim." *Wynn, supra,* 253 N.W.2d at 126.

In this case, the Rubs' second notice of removal was based on the same ground as their first notice of removal. Their first attempt at removal also failed and the case was remanded. So too the federal court ultimately denied the Rubs' second notice of removal. Although, ordinarily, the federal courts bear the responsibility to determine whether or not a case is removable, we believe the rationale of *Bell* and *Wynn* is persuasive in this case. When the federal court has previously remanded a notice of removal and subsequently denies a second notice of removal by the same party which is based on the same ground, the state court retains jurisdiction. *Cf., Ralphs Grocery Co. v. Meat Cutters Union Local No. 421,* 379 F.Supp. 281 (C.D.Cal.1973) [federal court remand of the defendants' first petition for removal was res judicata with respect to a second petition for removal where there was no change whatsoever in the matter and proceeding which the defendants had initially attempted to remove]. We do not believe Congress intended to allow a defendant to repeatedly file notices of removal and endlessly delay state court proceedings. *Wynn.* Condoning that type of abuse of process is inconsistent with any notion of fairness and justice and undermines the purpose of the federal and North Dakota rules of procedure "to secure the just, speedy, and inexpensive determination of every action." Rule 1, F.R.Civ.P.; Rule 1, N.D.R.Civ.P. Under these circumstances, we conclude that the trial court had jurisdiction to hear this foreclosure action.

■ Duane argues that FCB was not authorized to sue him in state court be-

cause the Secretary of State had not issued FCB a certificate of authority as required by Section 10–22–19, N.D.C.C.[5] He claims that our prior cases holding to the contrary were improperly decided. *Production Credit Ass'n v. Obrigewitch,* 462 N.W.2d 115 (N.D.1990); *Federal Land Bank v. Brakke,* 447 N.W.2d 329 (N.D.1989); *Federal Land Bank v. Anderson,* 401 N.W.2d 709 (N.D.1987); *Federal Land Bank v. Gefroh,* 390 N.W.2d 46 (N.D.1986).

Farm Credit Banks are federally chartered instrumentalities of the United States. 12 U.S.C.A. § 2011. Each Farm Credit Bank is a "body corporate" and has the power to "sue and be sued." 12 U.S.C.A. § 2013(4). Those statutes clearly establish that Farm Credit Banks are corporations created by Congress. In *Federal Land Bank of Omaha v. Felt,* 368 N.W.2d 592, 595 (S.D.1985), the South Dakota Supreme Court reiterated the well established principle that

"[c]orporations created by the authority of the United States are not foreign corporations but have a legal existence in every state in which they may transact business pursuant to the authority conferred upon them by Congress. *See, e.g., Jeffreys v. Federal Land Bank of New Orleans,* 238 Ala. 97, 189 So. 557 (1939); *Home Owners' Loan Corp. v. Stookey,* 59 Idaho 267, 81 P.2d 1096 (1938); *Fischer & Van Gilder v. First Trust Joint–Stock Land Bank,* 210 Iowa 531, 231 N.W. 671 (1930); *Home Owners' Loan Corp. v. Caplan,* 236 Mo.App. 1276, 164 S.W.2d 652 (1942); *Leggett v. Federal Land Bank of Columbia, S.C.,* 204 N.C. 151, 167 S.E. 557 (1933); *Severson v. Home Owners' Loan Corporation,* 184 Okl. 496, 88 P.2d 344 (1939); *Dodson v. Home Owners' Loan Corp.,* 123 S.W.2d 435 (Tex.Civ.App.1938)."

We conclude once again that FCB is a federally chartered corporation and as such, is not a foreign corporation under Section 10–22–19, N.D.C.C. Consequently,

---

**5.** Section 10–22–19, N.D.C.C., provides:
"*Transacting business without certificate of authority.* No foreign corporation transacting business in this state without a certificate of

authority may maintain any action, suit, or proceeding in any court of this state, until the corporation has obtained a certificate of authority...."

it was not required to obtain a certificate of authority from the Secretary of State in order to maintain this action.

Duane asserts that he was denied the right to a trial by jury. The right to a trial by jury depends upon whether a case is an action at law or an action in equity. *Production Credit Ass'n v. Rub*, 475 N.W.2d 532 (N.D.1991). There is no absolute right to a trial by jury in an equitable action. *Id.* The foreclosure of a mortgage is an equitable action and is triable to the court without a jury. *First National Bank and Trust v. Brakken*, 468 N.W.2d 633 (N.D.1991). In an equitable action, a party who raises legal defenses denominated as a counterclaim is not entitled to a jury trial on those defenses. *Id.* A party is not entitled to a jury trial on a damage claim that is incidental to and dependent upon a primary claim for which a jury trial is not allowed. *Id.*

Because the foreclosure of a mortgage is an equitable action, the Rubs were not entitled to a jury trial. The Rubs' counterclaim sought damages for an alleged breach of the mortgage agreement. That claim is incidental to and dependent upon the primary foreclosure claim for which there was no right to a jury trial. The trial court did not err in denying the request for a jury trial.

Duane argues that the trial court erred in not granting judicial forbearance under the confiscatory-price defense provisions in Sections 28-29-04, 28-29-05, and 28-29-06, N.D.C.C. The existence of a farm emergency authorizing judicial forbearance under the confiscatory-price defense statutes is a question of fact which is reviewable under the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P. *Federal Land Bank of St. Paul v. Asbridge*, 474 N.W.2d 490 (N.D.1991). The trial court found that the Rubs had failed to offer any evidence to support any of their affirmative defenses. The trial court thus found that the Rubs failed to offer any evidence on the confiscatory-price defense and that finding is not clearly erroneous.

Duane contends that he was not granted all his rights under the Agricultural Credit Act of 1987. He asserts that the "act was a fraud on its face." Duane has not addressed any specific deficiency in the evaluation of the Rubs' restructuring plan, and FCB presented evidence at trial that it complied with the Act. Duane's argument that the Act is a "fraud on its face" is meritless.

Duane claims that the promissory note was defective on its face because FCB raised the interest rate from 8¼% to 11¼% when the loan was reamortized after the Rubs failed to make timely payments. The promissory note authorized FCB to establish different rates of interest in accordance with the Farm Credit Act of 1971. The 1971 Act authorized variable interest rates "during the repayment period of the loan, in accordance with the rate or rates currently being charged by the bank." 85 Stat. 585 (1971). We conclude that FCB was authorized to increase the interest rate.

Duane asserts that he requested the sheriff to sell the foreclosed property in separate parcels, but the sheriff sold all of the land, except the homestead, in one parcel. Section 28-23-07, N.D.C.C., says there can be no valid waiver in a real estate mortgage of a mortgagor's right to designate homestead property for separate sale at a foreclosure sale. 1989 N.D.Laws ch. 394, § 2; 1991 N.D.Laws ch. 360, § 2. Section 32-19-20, N.D.C.C., allows the debtor to designate a homestead for separate sale by serving a copy of the legal description on the sheriff at least ten business days before the scheduled sheriff's sale. 1989 N.D.Laws ch. 394, § 4; 1991 N.D.Laws ch. 360, § 1.

In this case, the sheriff's sale was held on August 19, 1991. According to the Sheriff's Report of Sale on Foreclosure, on August 19, 1991, Duane filed a "Request of Sale of Real Estate" which designated the homestead and six other separate parcels.

In *First Security Bank v. Enyart*, 439 N.W.2d 801 (N.D.1989), we held that Section 28-23-07, N.D.C.C., authorized a mortgagor to designate a homestead for separate sale and redemption. Despite the Rubs' failure to give notice of the designa-

tion of homestead at least ten business days before the scheduled sheriff's sale, the Adams County Sheriff nonetheless followed *Enyart* and separately sold the parcel designated as the Rubs' homestead.

The sheriff sold the remaining property in one parcel. In *Production Credit Ass'n v. Henderson*, 429 N.W.2d 421 (N.D.1988), we held that the waiver of the right to have known lots or parcels sold separately at a foreclosure sale was not contrary to public policy. In the real estate mortgage, the Rubs waived their right to have the property sold in known lots or parcels and that waiver is valid under *Henderson.*

█ Duane argues that the "forced sale" of the homestead violated Article XI, § 22, N.D. Const.[6] In *Farm Credit Bank of St. Paul v. Stedman*, 449 N.W.2d 562 (N.D.1989), we rejected an identical argument and held that the North Dakota Constitution does not prohibit the enforcement of a mortgage against a homestead. The sale of the homestead did not violate Article XI, § 22, N.D. Const.

We have examined the remaining arguments raised by Duane, and we conclude that they do not affect our decision.

We affirm the foreclosure judgment and the order confirming the sheriff's sale.

ERICKSTAD, C.J., VANDE WALLE and MESCHKE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting due to the resignation of the Honorable H.F. GIERKE III.

---

6. Art. XI, § 22, N.D. Const., provides:

"The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws, exempting from forced sale to all heads of families a homestead, the value of which shall be limited and defined by law; and a reasonable amount of personal property; the kind and value shall be fixed by law. This section shall not be construed to prevent liens against the homestead for labor done and materials furnished in the improvement thereof, in such manner as may be prescribed by law."