Virgil ROTT, Plaintiff and Appellant,

and

others similarly situated, Plaintiffs,

v.

Alvin A. JAEGER, Secretary of State, in his official capacity; Jim Kusler, formerly Secretary of State, in his individual capacity; Ben Meier, formerly Secretary of State, in his individual capacity; Glenn Pomeroy, Insurance Commissioner, in his official capacity; Earl Pomeroy, formerly Insurance Commissioner, in his individual capacity; Heidi Heitkamp, Attorney General, in her official capacity; Nicholas Spaeth, formerly Attorney General, in his individual capacity; and Connecticut General Life Insurance Company, in its corporate capacity, Defendants and Appellees.

Civ. No. 930092.

Supreme Court of North Dakota.

Jan. 18, 1994.

---

Virgil Rott, pro se.

Douglas A. Bahr, Asst. Atty. Gen., Bismarck, for state officials, defendants and appellees.

Howard D. Swanson of Letnes, Marshall, Fiedler & Clapp, Grand Forks, for defendant and appellee Connecticut General Life Ins. Co.

SANDSTROM, Justice.

Virgil Rott appeals from district court judgments dismissing his complaint against Connecticut General Life Insurance Company and several state officials in their individual and official capacities. Rott claims Connecticut General has wrongly failed to register with the Secretary of State as a foreign corporation. Therefore, Rott contends Connecticut General could not have properly lent him and his wife $1.2 million, nor have foreclosed on their farm when they defaulted. We affirm the district court. Connecticut General Life Insurance Company was not, and is not, a "foreign corporation" required to be registered with the Secretary of State under N.D.C.C. ch. 10–22.

I

The facts underlying this case were recited in detail in *Rott v. Connecticut General Life Ins. Co.,* 478 N.W.2d 570, 572–73 (N.D.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2313, 119 L.Ed.2d 233, *reh'g denied,* —— U.S. ——, 113 S.Ct. 11, 120 L.Ed.2d 939 (1992). In 1979, Rott and his wife granted Connecticut General a mortgage on real and personal property to secure a $1.2 million loan. In 1983, the Rotts defaulted and Connecticut General brought a foreclosure action against them. A foreclosure judgment was entered on November 16, 1983, directing the property be sold. On June 26, 1985, the Rotts' real estate located in LaMoure and Kidder Counties was sold to Connecticut General by the sheriff of LaMoure County. The Rotts failed to redeem and a sheriff's deed was issued to Connecticut General on June 30, 1986.

In an effort to set aside the foreclosure and regain the land, Rott has initiated several unsuccessful lawsuits. *See Rott v. Connecticut General Life Ins. Co.,* 478 N.W.2d at

572–73. This case began in October 1992 when Rott sued Connecticut General and several state officials seeking mandamus and monetary relief. Rott claims Connecticut General, as an out-of-state corporation, is required under N.D.C.C. ch. 10–22 to register with the Secretary of State and pay a fee before conducting business in North Dakota. Rott argues he was injured by Connecticut General's failure to register with the Secretary of State, and by the state officials' failure to enforce the registration requirement. According to Rott, if the state officials would have enforced chapter 10–22, Connecticut General would not have conducted business in the state by lending him $1.2 million and would not have been able to enforce its mortgage on his property when he defaulted. Rott also claims, because the state officials have not enforced the registration requirement, the state has lost registration fee revenues. Rott seeks $7 million in damages and a court order compelling the state officials to enforce the requirements of chapter 10–22.

The district court dismissed Rott's complaint against the state officials concluding:

1. In their official capacities, each is entitled to the protection of sovereign immunity.

2. In their individual capacities, each is immune from liability under N.D.C.C. § 32–12–1.15(2).

The district court dismissed the complaint against Connecticut General concluding:

1. The complaint is barred by the doctrine of res judicata.

2. The claim is barred by the statute of limitations.

3. Even if Connecticut General is required to be registered with the Secretary of State, N.D.C.C. § 10–22–19 does not provide any private right to bring an action for monetary damages.

On appeal, Rott claims the district court erred and abused its discretion when it held the state officials were entitled to immunity for alleged acts of "nonfeasance, misfeasance, and malfeasance" in not enforcing the requirements of N.D.C.C. ch. 10–22. Rott

presents no argument challenging the district court's order dismissing Connecticut General.

## II

Rott points to N.D.C.C. § 10–22–01[1] which, in 1979, prohibited a "foreign corporation" from transacting business in North Dakota without a certificate of authority from the Secretary of State. Because Connecticut General lacked such a certificate, Rott contends it could not have legally lent him and his wife the $1.2 million.

Rott next points to N.D.C.C. § 10–22–19[2] which, in 1983, prohibited a "foreign corporation" from bringing a legal action in North Dakota courts without a certificate of authority from the Secretary of State. Because Connecticut General lacked such a certificate, Rott contends it could not have brought its foreclosure action.

The flaw in Rott's analysis is Connecticut General was not a "foreign corporation" for the purposes of the statutes on which he relies. The legislature, for chapters 10–19 through 10–23, defined a "foreign corporation" as a "corporation for profit organized under laws other than the laws of this state for a purpose or purposes for which a corporation may be organized under chapters 10–19 through 10–23." N.D.C.C. § 10–19–02(2) (1979). Insurance companies could not be organized under those chapters, but were organized under chapter 26–08. *See* N.D.C.C. § 26–08–01 (1979); N.D.C.C. § 10–19–03 (1979).

Foreign insurance companies were required to register with the Insurance Commissioner, N.D.C.C. § 26–09–01 (1979); and were prohibited from securing a certificate of authority from the Secretary of State, N.D.C.C. § 10–22–03 (1979).

## III

Since the times relevant to Rott's loan and foreclosure, N.D.C.C. ch. 10–19 has been recodified as ch. 10–19.1, and N.D.C.C. title 26 as title 26.1. The language defining "foreign corporation" has changed, but the substance has not. N.D.C.C. § 10–19.1–01(13) defines "foreign corporation" as "a corporation organized for profit that is incorporated under laws other than the laws of this state for a purpose or purposes for which a corporation may be incorporated under this chapter." The definition continues to apply to N.D.C.C. ch. 10–22. *See* N.D.C.C. § 10–22–01. Insurance companies now organize under N.D.C.C. ch. 26.1–05. *See* N.D.C.C. § 26.1–05–01. Out-of-state insurance companies continue to be required to register with the Insurance Commissioner, N.D.C.C. § 26.1–11–01; and to be prohibited from securing a certificate of authority from the Secretary of State. N.D.C.C. § 10–22–03.

---

1. N.D.C.C. § 10–22–01 (1979), provides, in part:

   "No foreign corporation shall have the right to transact business in this state until it shall have procured a certificate of authority so to do from the Secretary of State. No foreign corporation shall be entitled to procure a certificate of authority under this chapter to transact in this state any business which a corporation organized under chapters 10–19 through 10–23 is not permitted to transact."

2. N.D.C.C. § 10–22–19 (1983), provides:

   "*Transacting business without certificate of authority.*—No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit, or proceeding in any court of this state, until such corporation shall have obtained a certificate of authority. Nor shall any action, suit, or proceeding be maintained in any court of this state by any successor or assignee of such corporation on any right, claim, or demand arising out of the transaction of business by such corporation in this state,

until a certificate of authority shall have been obtained by such corporation or by a corporation which has acquired all or substantially all of its assets.

"The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit, or proceeding in any court of this state.

"A foreign corporation which transacts business in this state without a certificate of authority shall be liable to this state, for the years or parts thereof during which it transacted business in this state without a certificate of authority, in an amount equal to all fees which would have been imposed upon such foreign corporation had it duly applied for and received a certificate of authority to transact business in this state, together with any penalties for nonpayment of such fees.

"The attorney general shall bring proceedings to recover all amounts due this state under the provisions of this section."

Under the current statutory scheme, insurance companies are not required to register with the Secretary of State. Because Connecticut General was not required to be registered with the Secretary of State, Rott's claims are without merit. The judgments of the district court dismissing Rott's claims are affirmed.

VANDE WALLE, C.J., and MESCHKE and LEVINE, JJ., and RALPH J. ERICKSTAD, Surrogate Justice, concur.

RALPH J. ERICKSTAD, Surrogate Justice, sitting in place of NEUMANN, J., disqualified.