The **FEDERAL LAND BANK OF SAINT PAUL**, Plaintiff and Appellee,

v.

Carol A. **ZIEBARTH**, Defendant and Appellant.

Silver Ziebarth, also known as Sylvester A. Ziebarth; Rocky Mountain Investment Properties, Inc.; Dakota Western Bank; United States of America; Leslie L. Wade; Idella S. Wade; and William W. Binek, individually and doing business as Binek Law Office, Defendants.

Civ. No. 930276.

Supreme Court of North Dakota.

July 18, 1994.

---

John L. Sherman (argued), of Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for plaintiff and appellee.

Carol A. Ziebarth (present, but did not argue), and Sylvester A. "Silver" Ziebarth, pro se.

MESCHKE, Justice.

Carol Ziebarth appeals from a supplemental judgment denying her motion to amend a prior judgment and assessing costs and attorney's fees, and from an order imposing sanctions limiting her ability to further litigate the foreclosure of her property. We modify the order imposing sanctions and otherwise affirm.

Ziebarth and her husband defaulted on loans from the Federal Land Bank of St. Paul.[1] In 1987, the Bank sued to foreclose on mortgages of real property securing those loans. Following a series of bankruptcy filings, dismissals, and appeals, we summarily affirmed judgment of foreclosure against Ziebarth in *Farm Credit Bank of St. Paul v. Ziebarth,* 458 N.W.2d 513 (N.D.1990). We then affirmed a judgment evicting Ziebarth from the property. *Farm Credit Bank of St. Paul v. Ziebarth,* 485 N.W.2d 788 (N.D.), *cert. denied,* — U.S. —, 113 S.Ct. 501, 121 L.Ed.2d 437 (1992). The long and tortuous history of this litigation, and related cases, is set out in greater detail in *Ziebarth v. Farm Credit Bank of St. Paul,* 494 N.W.2d 145 (N.D.1992). *See also Binek v. Ziebarth,* 456 N.W.2d 515 (N.D.1990). Ziebarth has continued to attempt to relitigate these matters in a variety of state and federal forums.

This appeal involves Ziebarth's motion to amend the judgment of foreclosure, based upon claims that have been previously litigated. The Bank responded to the motion and requested an injunction restricting Ziebarth and her husband from further litigating questions previously decided about the land, the foreclosure, and the eviction. The trial court entered a supplemental judgment denying Ziebarth's motion to amend the judgment, and entered an order imposing sanctions that prohibited Ziebarth and her husband from further litigating issues related to the land, the foreclosure, and the eviction without first receiving permission from the trial court and paying prior judgments assessing costs and attorney's fees for frivolous litigation. Ziebarth appealed.

## I. RELITIGATED ISSUES

Ziebarth again attempts to rehash issues that we have before decided adversely to her. One last time, we will for Ziebarth's benefit reiterate these well-settled rules of law that are res judicata in this case.

### A. Foreign Corporation

■ We earlier rejected Ziebarth's argument that the Bank was not entitled to maintain an action in state court because it was a "foreign corporation" required to register with the Secretary of State under NDCC 10–22–19. *Farm Credit Bank of St. Paul v. Ziebarth,* 485 N.W.2d at 792. We have consistently rejected that argument in a series of challenges to the Bank's authority to sue in courts of this State. *See, e.g., Farm Credit Bank of St. Paul v. Brakke,* 483 N.W.2d 167, 169 (N.D.1992); *Farm Credit Bank of St. Paul v. Rub,* 481 N.W.2d 451, 457–458 (N.D.1992); *Federal Land Bank of St. Paul v. Brakke,* 447 N.W.2d 329, 330 (N.D.1989); *Federal Land Bank of Saint Paul v. Anderson,* 401 N.W.2d 709, 713 (N.D.1987); *Federal Land Bank of Saint Paul v. Gefroh,* 390 N.W.2d 46, 47 (N.D.1986). Furthermore, NDCC 10–22–03(2) exempts corporations engaged in banking or insurance from the registration requirements of NDCC 10–22–19. *See Rott v. Jaeger,* 510 N.W.2d 651, 653–654 (N.D.1994). The Bank was not required to register as a foreign corporation as a prerequisite to bringing the foreclosure action.

### B. Homestead Exemption

■ Ziebarth asserts that Article XI, Section 22 of the North Dakota Constitution

---

1. At various times during the lengthy history of this case the plaintiff has been called the Federal Land Bank of St. Paul, the Farm Credit Bank of St. Paul, and AgriBank, FCB. We will refer to it as "the Bank."

prohibits the forced sale of a homestead to satisfy a mortgage. We have rejected this argument in a series of cases, including an earlier appeal by Ziebarth. *See Lake Region Credit Union v. Crystal Pure Water, Inc.,* 502 N.W.2d 524, 526–527 (N.D.1993); *Farm Credit Bank of St. Paul v. Ziebarth,* 485 N.W.2d at 792; *Farm Credit Bank of St. Paul v. Brakke,* 483 N.W.2d at 169–170; *Farm Credit Bank of St. Paul v. Rub,* 481 N.W.2d at 459; *State ex rel. Board of University and School Lands v. Bladow,* 462 N.W.2d 453, 455 (N.D.1990); *Farm Credit Bank of St. Paul v. Stedman,* 449 N.W.2d 562, 565–566 (N.D.1989); *Podoll v. Brady,* 423 N.W.2d 151, 153 (N.D.1988); *Federal Land Bank of Saint Paul v. Gefroh,* 418 N.W.2d 602, 603–605 (N.D.1988). The foreclosure and sale of Ziebarth's homestead was not unconstitutional.

### C. *Bankruptcy Stay*

■ Ziebarth asserts that the district court was without jurisdiction to enter summary judgment in July 1989 because the action was stayed by Ziebarth's pending appeal from dismissal of her bankruptcy filing. This question was raised in Ziebarth's original appeal from the judgment of foreclosure that we summarily affirmed in 1990. *See Farm Credit Bank of St. Paul v. Ziebarth,* 458 N.W.2d 513 (N.D.1990). We will address this issue to finally put it to rest.

Although the record on this appeal does not include all of the relevant documents from Ziebarth's bankruptcy, the procedural and chronological history of her bankruptcy case is outlined in *Binek v. Ziebarth,* 456 N.W.2d at 516–517. The Bank brought this foreclosure action in 1987. On January 13, 1988, Ziebarth filed a bankruptcy petition, and all further proceedings in this action were stayed pursuant to 11 U.S.C. § 362(a). Ziebarth's bankruptcy petition was dismissed on April 5, 1989, and she appealed to federal district court. After the April 5 bankruptcy dismissal, the Bank served an amended summons and complaint in this action, and summary judgment was entered on July 12, 1989. The next day, July 13, the bankruptcy court issued a stay pending Ziebarth's appeal of the dismissal.

■ Ziebarth argues that the filing of the notice of appeal from dismissal of her bankruptcy petition continued the automatic stay under 11 U.S.C. § 362(a) and divested the state district court of jurisdiction over the foreclosure case. However, it is well settled that the automatic stay terminates upon dismissal of the bankruptcy petition [11 U.S.C. § 362(c)(2)(B)], and is not automatically revived by the filing of a notice of appeal from the dismissal. *See, e.g., In re March,* 988 F.2d 498, 499 (4th Cir.1993); *In re Lashley,* 825 F.2d 362, 364 (11th Cir.1987); *In re Regency Woods Apartments, Ltd.,* 686 F.2d 899, 902–903 (11th Cir.1982); *In re Weston,* 110 B.R. 452, 456–457 (E.D.Cal.1989); *In re Weathersfield Farms, Inc.,* 34 B.R. 435, 439 (Bankr.D.Vt.1983); *Olson v. Commissioner of Internal Revenue,* 86 T.C. 1314, 1318, 1986 WL 22148 (1986). *See also* F.R.B.P. 8005; Collier, Bankruptcy ¶¶ 8005.03, 8005.04 (1994). Furthermore, as *In re Lashley,* 825 F.2d at 364, reflects, the bankruptcy court's July 13 order of stay does not apply retroactively to stay the state court proceedings between April 5 and July 13.

We conclude that the district court had jurisdiction when the summary judgment was entered on July 12, 1989.

## II. AUTHORITY TO ENTER "AMENDED" SUMMARY JUDGMENT

Ziebarth asserts that the July 12, 1989 summary judgment was not entered pursuant to the North Dakota Rules of Civil Procedure, because the Rules do not expressly provide for entry of an "amended summary judgment." Ziebarth claims that amendment of a judgment can only be done in accordance with NDRCivP 59 (New Trial) or NDRCivP 60 (Relief from Judgment).

We need not address the merits of Ziebarth's claim, because the July 12, 1989 judgment was not an amended judgment, but was in fact the first judgment entered in this case. Ziebarth's reference to a prior judgment in June, and entry of an amended judgment in July, clearly refers to the court's *orders for judgment.* The court's first "Order Granting Summary Judgment" was dated June 21, 1989. Ziebarth then made a

motion to set aside the summary judgment that had not yet been entered. On July 7, 1989, the court issued an "Amended Order for Summary Judgment and Order Denying Motion to Set Aside Summary Judgment."

■ The judgment entered on July 12, 1989, was not an "amended" judgment, but was the original judgment of foreclosure. The court had the authority to · enter an amended *order for judgment* any time before judgment was entered. *See* NDRCivP 54(b). Ziebarth's argument is without merit.

## III. EX PARTE ORDER GRANTING EXTENSION OF TIME

■ Ziebarth asserts that the court erred in refusing to strike as untimely the Bank's response to her motion to amend judgment.

On April 12, 1993, a supplemental judgment was entered assessing costs and attorney's fees against Ziebarth for filing frivolous motions in this case. Ziebarth filed a motion to amend that supplemental judgment. Counsel for the Bank telephoned the trial court judge, requesting additional time to respond to Ziebarth's motion, and the judge orally granted a ten-day extension. Counsel for the Bank wrote a letter confirming that telephone conversation, but inadvertently failed to send a copy to Ziebarth. Ziebarth's motion to strike the Bank's return as untimely was denied by the trial court.

Under NDRCivP 6(b)(1), the court has the discretion to enlarge time limits without notice if the request is made before expiration of the original period:

> (b) *Enlargement.* When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order. . . .

Although it would have been far better to notify Ziebarth by a copy of the follow-up letter, the inadvertent failure to do so is not fatal. We conclude that the court did not abuse its discretion in denying Ziebarth's motion to strike the Bank's response.

## IV. INJUNCTION

Ziebarth asserts that the trial court erred in entering its Order Imposing Sanctions that enjoined Ziebarth from further litigating issues about the property, the foreclosure, and the eviction without first paying prior judgments imposing sanctions and obtaining permission of the court.

As a prelude to imposing sanctions, the court in its order detailed the lengthy history of Ziebarth's forays into the legal system, federal and state, over the last five years. That history demonstrates an endless series of vexatious and meritless litigation, including: numerous lawsuits against the Bank, Bank employees, county officials, and judicial officials; baseless notices of lis pendens, notices of "rescission," financing statements, and security agreements; and assorted frivolous motions and appeals. All of these matters relate, in one way or another, to the foreclosure and eviction actions that have been previously decided on appeal to this court. The two main issues stressed by Ziebarth on this appeal—the Bank's failure to register as a foreign corporation and the homestead exemption—have apparently been raised no fewer than a half-dozen times each, and have been expressly decided by this court in one of Ziebarth's previous appeals. Ziebarth's actions have resulted in seven pending judgments or orders requiring her to pay costs and, some, attorney's fees.

We expressed our exasperation at Ziebarth's ongoing litigation of baseless claims when awarding attorney's fees and costs against her in *Ziebarth v. Farm Credit Bank of St. Paul,* 494 N.W.2d at 148:

> Furthermore, we recognize Ziebarth's litigious nature and her propensity to appeal meritless claims, as evidenced by the above history of her legal forays. Her appellant's brief and reply brief attempt to raise issues that were decided against the Ziebarths in those prior proceedings.

In light of this legal history, the trial court ordered:

> Carol A. Ziebarth and Silver Ziebarth, also known as Sylvester A. Ziebarth, are here-

by enjoined and restrained from filing any further actions, motions, or other claims in any North Dakota court in the counties of Bowman, Slope, Golden Valley, Billings, Dunn, Stark, Hettinger and Adams relating to or in any way arising out of or touching upon the real property, foreclosure and sale of the land which was the subject of the above entitled action or the subject of Bowman County Civil Action No. 67CV87–617, or any part of the premises therein, or filing or recording notice of any such claim with any public officer of any of such counties, the same being lands described as follows . . . . until such time as

(a) All Judgments and Orders for costs and attorneys fees hereinabove described at paragraph 2 of this Order shall have been paid; and

(b) Carol A. Ziebarth and Silver Ziebarth, also known as Sylvester Ziebarth, or such of them as desires to seek additional legal relief, shall have obtained the order of this Court allowing the filing of any such action, motion or notice as is hereinabove prohibited.

The court explained the reasons for its order:

[T]he sanctions which are the subject of this Order do not infringe upon the right of said Defendants to obtain access to the courts to present proper causes of action, but only regulates their right to seek judicial relief with regard to the matters which are the subject of this Order; and the Court having further determined and concluded that any inconvenience to the said Defendants is necessary to protect and outweighed by the rights of AgriBank, FCB, its predecessor corporations, purchasers from any of them, the public officials of Bowman County, the judiciary of the State of North Dakota, and the State of North Dakota itself from the vexatious, oppressive, harassing and annoying litigation which is directed not toward the attainment of justice but to further or satisfy the individual malice of said Defendants Ziebarth towards those whom their litigation is directed; and the Court having further concluded that pecuniary compensation will not provide adequate relief to those injured and that restraint of said Defendants Ziebarth is necessary to prevent a multiplicity of judicial proceedings, as a result of all of which this Court has determined to impose sanctions against the Defendants Carol A. Ziebarth and Silver Ziebarth, also known as Sylvester A. Ziebarth. . . .

■ NDRCivP 11 requires that pleadings, motions, and papers must be signed, and the signer thereby certifies that "it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." NDRCivP 11 requires sanctions if a pleading, motion, or other paper is signed in violation of the Rule. Once the court determines that Rule 11 has been violated, the imposition of sanctions is mandatory. *Swanson v. Sheppard,* 445 N.W.2d 654, 659 (N.D.1989); *Williams v. State,* 405 N.W.2d 615, 624 (N.D.1987). The specific sanction to be imposed lies within the discretion of the trial court. *Napoleon Livestock Auction, Inc. v. Rohrich,* 406 N.W.2d 346, 361–362 (N.D.1987). *See also* NDRCivP 11, Explanatory Note ("the court retains the necessary flexibility to deal appropriately with the violation and tailor the sanction to the particular facts of the case").

■ Ziebarth asserts that the sanctions in this case violate the "open courts" provision of Article I, Section 9 of the North Dakota Constitution. That constitutional power does not confer an absolute right of access to the courts of this State [*Farm Credit Bank of St. Paul v. Brakke,* 483 N.W.2d at 172–173; *Andrews v. O'Hearn,* 387 N.W.2d 716, 723 (N.D. 1986)], but must be interpreted in light of the " 'superior rights of the public and the necessities of the occasion.' " *Andrews v. O'Hearn,* 387 N.W.2d at 723 (quoting *Stockwell v. Crawford,* 21 N.D. 261, 266, 130 N.W. 225, 228 (1911)). As we said in *Farm Credit Bank of St. Paul v. Brakke,* 483 N.W.2d at 172–173, access to the courts may, under appropriate circumstances, be limited by narrowly tailored injunctive relief.

■ Sanctions for continued vexatious litigation of stale or frivolous claims have been consistently upheld in a variety of factual contexts by federal appellate courts, based upon FRCivP 11 or the inherent authority of the court. *See, e.g., Mayfield v. Klevenhagen,* 941 F.2d 346 (5th Cir.1991); *Gelabert v. Lynaugh,* 894 F.2d 746 (5th Cir.1990); *Farguson v. MBank Houston, N.A.,* 808 F.2d 358 (5th Cir.1986); *Traylor v. City of Atlanta,* 805 F.2d 1420 (11th Cir.1986); *Procup v. Strickland,* 792 F.2d 1069 (11th Cir.1986); *Cook v. Peter Kiewit Sons Co.,* 775 F.2d 1030 (9th Cir.1985); *Abdullah v. Gatto,* 773 F.2d 487 (2d Cir.1985); *Urban v. United Nations,* 768 F.2d 1497 (D.C.Cir.1985); *In re Martin-Trigona,* 737 F.2d 1254 (2d Cir.1984); *In re Hartford Textile Corp.,* 681 F.2d 895 (2d Cir.1982); *Peck v. Hoff,* 660 F.2d 371 (8th Cir.1981). *See also* Goglia, Annotation, *Authority of United States District Court, Under 28 USCS § 1651(a), to Enjoin, Sua Sponte, a Party from Filing Further Papers in Support of Frivolous Claim,* 53 A.L.R.Fed. 651 (1981). Those precedents aid our interpretation of our like NDRCivP 11.

The United States Supreme Court has also had to face the problem of a prodigious litigant. In *In re McDonald,* 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989), the Court ordered that a litigant who had made 73 separate in forma pauperis filings would henceforth be denied in forma pauperis status, and directed the clerk of court not to accept from McDonald any further petitions for extraordinary relief unless accompanied by the docket fee.

In three prior cases we have addressed injunctive relief restricting future actions of particularly litigious parties. In *State ex rel. Employees of the State Penitentiary v. Jensen,* 331 N.W.2d 42 (N.D.1983), an inmate filed multiple civil rights actions against employees of the state penitentiary, and attempted to file frivolous liens against real and personal property of those employees. The State sued Jensen and obtained an injunction prohibiting him from filing liens that were not authorized by law. This court upheld the injunction against an overbreadth challenge, concluding that the trial court had not abused its discretion.

In *Brakke v. Rudnick,* 409 N.W.2d 326 (N.D.1987), the trial court enjoined the plaintiffs from commencing *any* lawsuit against *any* party within that judicial district without prior approval of the court. Suggesting that "injunctive relief to prevent plaintiffs from commencing future actions" may be appropriate "against litigants who have instituted frivolous and vexatious actions or who have endlessly sought to raise anew stale claims," we nevertheless reversed the injunction on the facts of that case. *Brakke v. Rudnick,* 409 N.W.2d at 334–335. We stressed that, although the Brakkes had been involved in a great deal of litigation, they were not always the instigators of the litigation; the other litigation did not involve the same transactions, parties, or factual circumstances as the current action; the record on appeal did not include evidence showing the other litigation; and the present action was not frivolous as to all defendants. On those facts, we concluded that the court erred in enjoining all future lawsuits by the Brakkes.

In *Farm Credit Bank of St. Paul v. Brakke,* we again reviewed the trial court's imposition of sanctions against the litigious Brakke family. The trial court entered an injunction prohibiting the Brakkes from (1) holding any "trustee's sale" of certain property; (2) filing any document "that purports to transfer, affect, attack or assert any right, title or interest" in certain property "with any office (including, without limitation, any clerk of court, any bankruptcy court, any register of deeds, any disciplinary board of any bar association, any judicial conduct commission, any newspaper publisher, any taxing authority, etc.), whether within or outside the State of North Dakota"; (3) removing crops from the described land; (4) "[m]olesting, hindering, harassing, annoying or interfering with the present titleholders" of the land; and (5) interfering with the present titleholders' quiet enjoyment and possession of the land. *Farm Credit Bank of St. Paul v. Brakke,* 483 N.W.2d at 171. We upheld those portions of the injunction prohibiting Brakkes from holding a "trustee's sale," removing crops, or interfering with quiet enjoyment and possession. However, we reversed as too broad those parts restricting the

Brakkes' ability to file any document in any office regarding the land. We noted that the prohibition was so broad as to limit the Brakkes' right to publish a letter to the editor of the local newspaper, thereby raising "serious first amendment implications." *Farm Credit Bank of St. Paul v. Brakke,* 483 N.W.2d at 173. We also struck down the provision enjoining the Brakkes from molesting, hindering, harassing, annoying or interfering with the present owners, because the language was vague and also raised first amendment implications. *Id.*

Both *Brakke* cases differ from this case. The trial court in the first *Brakke* case attempted to restrict the plaintiffs' right to file *any* lawsuit, regardless of subject matter, against *any* party. It was not narrowly tailored to address only the particular abuses caused by the plaintiffs' prior litigation. In this case, the court made clear that the restrictions against Ziebarth applied only to future litigation about the land, the foreclosure, and the eviction, which have already been litigated *ad infinitum.* This injunction is narrowly tailored to enjoin conduct specifically related to Ziebarth's prior abuses, *i.e.,* endless relitigation of the same stale claims.

The court in the first *Brakke* case also stressed that the Brakkes' prior litigation did not always involve the same transactions, factual circumstances, or parties, and that not all current claims were frivolous. In this case, Ziebarth's prior litigation has focused entirely upon the same transactions, factual circumstances, and issues, and virtually all claims in all of Ziebarth's myriad pleadings, motions, and filings may be characterized as frivolous. This particular appeal arose from Ziebarth's motion to amend the judgment, based upon the homestead claim that has repeatedly been decided against her. This claim was patently frivolous.

The second *Brakke* case is also different. The injunction prohibited the Brakkes from filing *any* document relating to the land in *any* office without limitation. There was no conditional provision allowing the Brakkes to raise meritorious claims by leave of court. Furthermore, the injunction was so broad as to prohibit conduct protected by the First Amendment. The injunction in this case is not nearly as broad, limiting only relitigation of the foreclosure and eviction. It also protects Ziebarth's right to raise nonfrivolous claims by seeking leave of the court, and does not raise First Amendment concerns. We conclude that the *Brakke* decisions are not barriers to the injunction issued in this case.

We agree with those federal appellate courts that have, under similar factual circumstances, upheld injunctions limiting litigants' access to the courts. As noted in *In re Hartford Textile Corp.,* 659 F.2d 299, 305 (2d Cir.1981), courts "are not powerless to protect the public, including litigants who appear before the Courts, from the depredations of those ... who abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive appeals and other proceedings." *See also In re Martin–Trigona,* 737 F.2d at 1262. A court's authority to stem abuses of the judicial process arises not only from the applicable rules and statutes, like FRCivP 11 and NDRCivP 11, but also from the court's inherent power to control its docket and to protect its jurisdiction and judgments, the integrity of the court, and the orderly and expeditious administration of justice. *See, e.g., Farguson v. MBank Houston, N.A.,* 808 F.2d at 360; *Procup v. Strickland,* 792 F.2d at 1073; *Urban v. United Nations,* 768 F.2d at 1500. The court has the "responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others." *Procup v. Strickland,* 792 F.2d at 1074. As explained in *Farguson v. MBank Houston, N.A.,* 808 F.2d at 359, the rule applies with equal force to *pro se* litigants, "for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."

The record in this case demonstrates a lengthy pattern of abuse of the legal process, characterized by Ziebarth's relentless attempts to relitigate issues that long ago became res judicata. The injunction was narrowly tailored to specifically address those past abuses. We conclude that the court did not abuse its discretion in enjoining certain future litigation by Ziebarth.

We are, however, concerned about one aspect of the injunction entered in this case. The trial court imposed two conditions for future filings by Ziebarth, requiring that she pay the prior judgments for costs and attorney's fees *and* obtain permission of the court. By using the conjunctive "and," rather than the disjunctive "or," the injunction may have the effect of precluding Ziebarth from bringing a meritorious claim merely because she is financially unable to pay the prior judgments. We do not believe it was the trial court's intent to preclude Ziebarth from raising a nonfrivolous claim if she is unable to pay prior judgments. Accordingly, we modify the injunction to change the "and" to "or," thereby making the two conditions disjunctive.

Finally, we repeat the admonitions we have in the past given to particularly recalcitrant litigants. The public interest demands that, at some point, there be an end to litigation, so the parties may go about their normal business. *Friedt v. Moseanko*, 498 N.W.2d 129, 132 (N.D.1993); *In re Estate of Kjorvestad*, 395 N.W.2d 162, 164 (N.D.1986). As we reiterated in *Texaro Oil Co. v. Mosser*, 299 N.W.2d 191, 196 (N.D.1980) (quoting *City of Wahpeton v. Drake–Henne, Inc.*, 228 N.W.2d 324, 331 (N.D.1975)), *overruled on other grounds by GeoStar Corp. v. Parkway Petroleum, Inc.*, 495 N.W.2d 61, 67 (N.D. 1993):

> "It is for the public interest and policy to make an end to litigation * * * so that * * * suits may not be immortal, while men are mortal. . . . there should be at some point an end to litigation. . . . Let this be it."

We affirm the supplemental judgment. We modify the order imposing sanctions in accordance with this opinion and, as modified, we affirm.

LEVINE, NEUMANN and SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring and dissenting.

In this case, I would require the Court's permission for future filings regardless of the payment of prior judgments for costs and attorney fees.