**Rodney OMLID, Lorrie Omlid, Aleasha Omlid and Adam Omlid, Plaintiffs, Appellees and Cross–Appellants,**

v.

**John SWEENEY, individually and d/b/a Valley Region Contracting, and Ruth Sweeney, Defendants, Appellants and Cross–Appellees.**

Civ. No. 910324.

Supreme Court of North Dakota.

April 21, 1992.

Wills and Lill, Grand Forks, for plaintiffs, appellees and cross-appellants; argued by Karen Wills.

Morley & Morley, Ltd., Grand Forks, for defendants, appellants and cross-appellees; argued by Michael J. Morley.

ERICKSTAD, Chief Justice.

John Sweeney, individually, and doing business as Valley Region Contracting, and Ruth Sweeney, individually, appeal from the judgment of the District Court for Grand Forks County rescinding a purchase contract between the parties. Rodney, Lorrie, Adam, and Aleasha Omlid cross appeal from various portions of the district court's judgment as well. We reverse and remand.

Rodney and Lorrie Omlid and their two children Aleasha and Adam filed this action against John Sweeney, individually and doing business as Valley Region Contracting, on February 24, 1989, seeking rescission of a purchase contract for real property, and, in the alternative, seeking damages for constructive fraud, breach of warranty, actual fraud and misrepresentation, or negligence. An amended complaint asking for a jury trial was filed on March 7, 1989. An answer to the amended complaint was filed on April 24, 1989, generally denying any actual or constructive fraud, breach of warranties, or negligence, and further asserting that the Omlids were not entitled to rescission in that they had acted in an untimely manner in seeking rescission. An amended answer was filed on April 28, 1989, asserting that the amended complaint was not in accordance with section 32–03–07 N.D.C.C., to the extent it sought exemplary or punitive damages. On September 17, 1990, the Omlids filed a motion to allow them to amend their complaint to add Ruth

Sweeney and Alice Fladland as party defendants, to add claims for punitive damages, and to have the personal injury claims of Rodney, Adam, and Aleasha Omlid dismissed without prejudice. Sweeney resisted the motion in part and a hearing was held on September 26, 1990. At the hearing, the Omlids withdrew their motion to have Rodney, Adam, and Aleasha's claims for personal injuries dismissed.

On September 27, 1990, the trial court granted the Omlids' motion to add Ruth Sweeney as a party defendant and deferred decision on the remaining requests because the court had not been provided a copy of the proposed second amended complaint. On or about October 24, 1990, the trial court denied the Omlids' motion to add Alice Fladland as a party defendant, but granted their motion to add a claim for punitive or exemplary damages.

On October 31, 1990, the Omlids filed a second amended complaint adding Ruth Sweeney as a party defendant and adding a claim for punitive or exemplary damages. On November 8, 1990, the Sweeneys jointly answered the Omlids' second amended complaint.

In a pretrial hearing held on January 15, 1991, the trial court advised the parties that it would, on its own motion, bifurcate the issues and hear the claim for rescission as a bench trial and proceed on the remaining claims before a jury if rescission were not granted.

After hearing the evidence, the trial court, on or about January 23, 1991, in a memorandum decision, concluded that the Omlids were entitled to have the purchase contract rescinded due to John Sweeney's failure to disclose a material fact of which he should have been aware. The trial court accordingly concluded that the Omlids were entitled to judgment against the Sweeneys in an amount equal to the purchase price of the house, plus any monies expended for improvements after the date of purchase less a $375 per month setoff as fair rental value of the property for the time they occupied the premises and until such time as they vacated the premises. The real property in question was to be reconveyed to the Sweeneys within five days of entry of judgment. Also, the trial court initially determined that neither party was entitled to prejudgment interest, but it did award the Omlids costs and disbursements pursuant to Rule 54(e), N.D.R.Civ.P.

On January 31, 1991, the Omlids filed with the trial court a verified statement of costs. On February 6, 1991, the Sweeneys filed a memorandum in resistance to Omlids' verified statement of costs (motion to disallow certain costs and disbursements). On February 22, 1991, the Omlids moved the court to amend its memorandum decision to award prejudgment interest at their mortgage interest rate of nine and one-half percent per annum, to condition their obligation to satisfy their own mortgage, and to convey the property to the Sweeneys only upon the Sweeneys' satisfaction of the judgment. The Sweeneys resisted the Omlids' post-trial motion and additionally asked the court to vacate its memorandum decision and order and proceed to a jury trial on the damage claims. On or about April 19, 1991, the trial court issued a post-trial order relating to costs and disbursements. Additionally the trial court modified its earlier order regarding prejudgment interest, concluding that the Omlids were entitled to simple interest of six percent, compounded annually, and that the Sweeneys were entitled to an additional offset of a sum equal to six percent interest, compounded annually, on the $375 per month fair rental value from the purchase date until judgment was eventually entered. The trial court also concluded that the Sweeneys were entitled to an offset equal to all the state and federal tax benefits the Omlids obtained from the property in question. The trial court, however, directed the parties to calculate the precise amount to be setoff and that, if the parties could not reach an agreement, it would refer the issue to a certified public accountant.

On May 14, 1991, the Omlids moved the court to reconsider its award of costs, direct the time and manner for the reconveyance of the real property, and to rule on the tax setoff or, in the alternative, refer

the matter to a certified public accountant. The Sweeneys resisted the motion and on May 23, 1991, the trial court issued a second post-trial order directing that all judgment monies recovered by the Omlids be first applied toward satisfaction of the existing mortgage on the real property in question. To this end the Sweeneys were directed to pay the judgment against them to the Omlids and the mortgagee jointly. The trial court reiterated its decision that the property was to be reconveyed within five days of the notice of entry of judgment. Additionally, the trial court determined the amount of the tax benefit setoff the Sweeneys were entitled to.

On June 5, 1991, a judgment and decree was filed. On June 19, 1991, John Sweeney moved the trial court to amend its findings and conclusions and amend its judgment pursuant to Rule 52(b), N.D.R.Civ.P., or, alternatively, amend the judgment pursuant to Rule 59(j), N.D.R.Civ.P. In the alternative, Sweeney moved for a new trial pursuant to Rule 59(b), N.D.R.Civ.P.

In support of his motion, Sweeney argued that constructive fraud had not been established at trial, that the Omlids' action for rescission was untimely, that the Omlids' offer to restore was defective, that restoration of the status quo was impossible, and that rescission was improper, in that the Omlids had an adequate legal remedy. Also on June 19, 1991, Ruth Sweeney separately moved the trial court to amend its judgment or, alternatively, for a new trial pursuant to Rules 52(b), 59(j), or 59(b), N.D.R.Civ.P., essentially arguing that, as the trial court had found that she had not committed constructive fraud in the sale of the home, judgment should not be entered against her.

The Omlids resisted the Sweeneys' motions and additionally moved for attorney's fees spent in responding to the post-judgment motions. On or about July 25, 1991, the trial court denied all the parties' motions except to the extent that the judgment be amended to reflect that the judgment was against John Sweeney only. An amended judgment and decree was accordingly entered on August 13, 1991.

On August 6, 1991, the Sweeneys moved the trial court for a new trial pursuant to Rule 59(b)(1) and (7), N.D.R.Civ.P. or, alternatively, for relief from the final judgment pursuant to Rule 60(b), N.D.R.Civ.P., asserting that the legal claims and issues should have been tried before a jury prior to the trial of equitable issues by the court. The Sweeneys' motion was based in part on this Court's recent decision in *Schumacher v. Schumacher*, 469 N.W.2d 793 (N.D. 1991).

On August 20, 1991, Ruth Sweeney moved the trial court for an order awarding her costs and disbursements, asserting that she was a prevailing party and, as such, entitled to an award of her costs and disbursements. The Omlids resisted the Sweeneys' motions and filed responses on August 27, 1991. On August 29, 1991, the Sweeneys moved that the Omlids' responses to the latest motions be stricken as being untimely pursuant to Rule 3.2, North Dakota Rules of Court. After a hearing in which the Omlids' responsive briefs were stricken, the trial court, on or about September 10, 1991, denied the Sweeneys' remaining motions. On September 20, 1991, John Sweeney filed a notice of appeal, and, on October 1, 1991, the Omlids filed a joint notice of cross appeal.

The facts precipitating this action go back to 1984 when John Sweeney built a new home for Henry and Alice Fladland. After completing the Fladlands' new home in 1984, Sweeney obtained the Fladlands' old house, moved it to its present location, and began repairing or renovating it. After substantial renovation, Sweeney advertised the home as for sale in the spring of 1986.

The Omlids responded to the advertisement and eventually decided to purchase the property. However, initially, the Omlids rented the property while they sought to secure alternative financing after their first loan application was denied or revoked. After approximately four months of renting the property, the Omlids obtained the necessary financing and, on or about October 10, 1986, finalized the purchase.

In late 1986 or early 1987, Lorrie Omlid began experiencing burning and watering eyes, rashes, burning and itching skin, vomiting, headaches, and fatigue. Eventually the Omlids learned that Lorrie's symptoms were possibly the result of exposure to formaldehyde from Urea Formaldehyde Foam Insulation (U.F.F.I.) in the house. Lorrie Omlid testified that she started to connect her health problems with the insulation in the house after a conversation with a co-worker's husband in November of 1987. The co-worker's husband, Stephen Johnson, testified that he told Lorrie that she should get herself tested for the insulation because the previous resident, Mrs. Fladland, had to move out of the house because of the insulation. Following this conversation with Stephen Johnson, Lorrie testified that she went to see Dr. Richard Leigh. Dr. Leigh examined Lorrie and determined in December of 1987 that her symptoms were probably due to exposure to formaldehyde.

During the ensuing months, the Omlids attempted to sell the property through a real estate broker as well as on their own. Additionally, the Omlids sought legal advice from at least three attorneys. In August of 1988, the Omlids first learned of the remedy of rescission through their present counsel and, on or about October 28, 1988, sent out a notice of rescission. As the Sweeneys would not effectuate mutual restoration, this action, which included a claim for rescission, was initiated.

■ Sections 9–09–01 through 9–09–04, N.D.C.C., set forth the statutory basis for unilateral rescission of a contract. Section 32–04–21, N.D.C.C., provides for rescission of a written contract by adjudication.[1,2]

1. According to annotations contained in the North Dakota Century Code, sections 9–09–01 through 9–09–04 and section 32–04–21 are derived from the California Civil Code. However, this is somewhat misleading. These statutory provisions remain, for the most part, unchanged from comparable sections in the Field Code which the Dakota Territory enacted in 1865. *See* Laws of Dakota Territory, sections 1–2034 (1865); Commissioners of the Code, The Civil Code of the State of New York, Report Complete (1865); *See also J.P. Furlong Enterprises, Inc. v. Sun Exploration and Production Company,* 423 N.W.2d 130, 134–37 (N.D.1988); William B. Fisch, *Civil Code: Notes For an Uncelebrated Centennial,* 43 N.D.L.Rev. 485 (1967).

2. Section 9–09–02, N.D.C.C., reads:
"*Rescission—When permitted.* A party to a contract may rescind the same in the following cases only:
   1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party;
   2. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part;
   3. If such consideration becomes entirely void from any cause;
   4. If such consideration before it is rendered to him fails in a material respect from any cause; or
   5. By consent of all of the other parties."
Section 9–09–04, N.D.C.C., reads:
"*Rules governing rescission.* Rescission, when not effected by consent or pursuant to sections 9–08–08 and 9–08–09, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:
   1. He shall rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and
   2. He shall restore to the other party everything of value which he has received from him under the contract or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."
Section 32–04–21, N.D.C.C., reads:
"*When rescission of contract adjudged.*—The rescission of a written contract may be adjudged on the application of the party aggrieved:
   1. In any of the cases mentioned in section 9–09–02;
   2. When the contract is unlawful for causes not apparent upon its face and when the parties were not equally in fault; or
   3. When the public interest will be prejudiced by permitting it to stand."
The requirements for unilateral rescission found in section 9–09–04, N.D.C.C., are largely "founded upon elementary principles of justice." *Swan v. Great Northern Ry. Co.,* 40 N.D. 258, 168 N.W. 657, 658 (1918). Thus, although section 9–09–04, N.D.C.C., does not expressly apply to rescission by adjudication (*see* section 32–04–21, N.D.C.C.), we have said that it "must be complied with if such compliance is necessary to do equity." *Volk v. Volk,* 121 N.W.2d 701, 706 (N.D.1963).

*Hovden v. Lind,* 301 N.W.2d 374, 377 (N.D. 1981). These statutory provisions reflect the conceptual distinction between rescission actions based in law and those based in equity.[3] *Id. See also Sperle v. Weigel,* 130 N.W.2d 315, 318 (N.D.1964); *Schaff v. Kennelly,* 61 N.W.2d 538, 546–547 (N.D.1953).

A rescission action at law is essentially an action for restitution based upon a party's prior unilateral rescission whereas an action in equity seeks to have the court terminate the contract and order restoration. *Schaff v. Kennelly,* 61 N.W.2d at 546, citing *Philpott v. Superior Court,* 1 Cal.2d 512, 36 P.2d 635 (1934). However, we have more recently said, "the rescission of a contract, whether the object of a suit in equity or an action at law, is governed by equitable principles." *Heinsohn v. William Clairmont, Inc.,* 364 N.W.2d 511, 513 (N.D.1985).[4]

We have noted that section 9–09–04, N.D.C.C., contemplates restoring the parties to the status quo. *West v. Carlson,* 454 N.W.2d 307, 309 (N.D.1990). We have also said, a "party seeking rescission is not allowed to place conditions on his restoration ... except as permitted by Section 9–09–04, N.D.C.C." *Blair v. Bougler,* 358 N.W.2d 522, 523 (N.D.1984). In the same year we said an effective restoration or offer to restore under section 9–09–04, N.D.C.C., cannot be conditioned on the payment of damages. *Alton's, Inc. v. Long,* 352 N.W.2d 198, 200 (N.D.1984).

In this case, the Omlids, in both their notice of rescission and their complaint, demanded damages for the value of the improvements made to the home. This alone is enough to make the Omlids' attempted unilateral rescission ineffective. *Alton's, Inc. v. Long,* 352 N.W.2d at 200. Without a prior unilateral rescission, the Omlids must seek the aid of equity to effect rescission.

A fundamental principle of equity is that a "party is not entitled to equitable relief if there is a remedy provided by law which is equally adjusted to rendering complete justice." *D.C. Trautman Company v. Fargo Excavating Company, Inc.,* 380 N.W.2d 644, 645 (N.D.1986); *see also* Dobbs, *Handbook on the Law Of Remedies,* § 2.5, p. 57,

---

**3.** The annotations to Field Code sections 1903 and 838 through 841, the equivalent provisions to sections 32–04–21 and 9–09–01 through 9–09–04, N.D.C.C., illustrate the historical distinction between rescission actions at law and those in equity.

The distinction can be seen in older decisions from California, which also adopted parts of the Field Code. *See e.g. Philpott v. Superior Court,* 1 Cal.2d 512, 36 P.2d 635 (1934); *McCall v. Superior Court,* 1 Cal.2d 527, 36 P.2d 642 (1934). However, it should be noted that California has since changed the statutory law surrounding rescission. *See generally* Daniel Jay Isenburg, *Statutory Changes in the Law of Rescission in California,* 19 Hastings L.J. 1248 (1968); *Paularena v. Superior Court,* 231 Cal.App.2d 906, 42 Cal.Rptr. 366 (1965).

In Hugh S. Koford, Comment, *Rescission at Law and in Equity,* 36 Cal.L.Rev. 606 (1948), we find the following general explanation of the historical distinction between rescission actions at law and those in equity:

"It is said that when one party to an executory contract has a right to rescind the contract, he may satisfy the requirements of a unilateral rescission and then bring an action at law; or he may seek rescission in equity. The distinction is plain. In the one case the contract no longer exists, it having been terminated by the prior rescission; in the other the contract continues to exist until set aside by the equity decree. Where the attempt to rescind has been effectual, the rescinding party may seek restitution. His action is then in quasi contract, based on a promise implied in law to return the consideration paid. If the consideration is land or personal property of a unique character, the action may be in equity for specific restitution. Where the attempt to rescind has been ineffectual, or if no such attempt has been made, the aid of a court of equity is necessary, since there is no implied contract upon which to base an action at law....

\* \* \* \* \* \*

"A plaintiff whose demands may be satisfied by an unconditional money judgment may rescind and bring an action at law; when more complete relief such as specific restitution or an accounting is desired, he may bring his action in equity, where the court may confirm the prior rescission or itself terminate the contract. [Footnotes omitted.]" *Id.* at 606–07, 614.

**4.** In *Philpott v. Superior Court,* 1 Cal.2d 512, 36 P.2d 635 (1934), the California Supreme Court discusses at some length the historical development of actions in law for rescission based on quasi-contract and the application of equitable principles to such actions.

(1973). In 12A C.J.S. *Cancellation of Instruments* § 10 (1980), we find the following statement: "Generally, a court of equitable jurisdiction will not rescind or cancel an instrument where complainant has a plain, adequate, and complete remedy at law."

In this case, the Omlids plead in the alternative for damages based on breach of warranty, actual fraud and misrepresentation, and negligence. The Omlids did not plead, and there was no evidence presented, which would indicate that an action for damages would not offer plain, adequate, and complete relief. Accordingly, the Omlids were not entitled to rescission. Because we decide that rescission was improperly granted, we need not address the remaining issues raised by the parties.

For the aforementioned reasons the judgment of the district court is reversed and this case is remanded for proceedings consistent with this opinion.

LEVINE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VANDE WALLE, J., concurs in the result.

VERNON R. PEDERSON, Surrogate Justice, sitting as a member of the Court to fill the vacancy created by the resignation of GIERKE J.

JOHNSON, J., not being a member of this Court at the time this case was heard, did not participate in this decision.