1997 ND 109

**CITY OF FARGO, North Dakota,
a Municipal Corporation,
Plaintiff and Appellee,**

v.

**D.T.L. PROPERTIES, INC., Defendant
and Appellant.**

**Civil No. 960272.**

Supreme Court of North Dakota.

June 3, 1997.

Thomas P. Martin (argued) and Garylle B. Stewart (appearance), of Solberg, Stewart, Miller & Johnson, Fargo, for plaintiff and appellee.

Jeff A. Bredahl (argued) and Tracy A. Gompf (appearance), of Bredahl Hill, P.C., Fargo, for defendant and appellant.

MARING, Justice.

[¶ 1] D.T.L. Properties, Inc. appealed from a judgment reforming a quit claim deed from the City of Fargo. We hold Fargo's reformation action was not barred by the ten-year statute of limitations in N.D.C.C. § 28–01–15(2). We also hold the trial court's finding of a mistake in the execution of the quit claim deed was not clearly erroneous. We affirm.

[¶ 2] The issues raised in this appeal involve a dispute between Fargo and D.T.L. regarding their respective interests in the Vanity Parking Lot in Fargo. Their dispute stems from a MIDA bond financing project, see N.D.C.C. Ch. 40–57, to renovate the Black Building, a commercial office building in Fargo. The statutory scheme for MIDA bond financing authorizes a private developer to finance an industrial development project with tax free municipal bonds. Under the procedure, a municipality holds the record title to the project as a conduit for the developer and leases the property back to the developer with an option to purchase for a nominal sum after the MIDA bond is repaid.

[¶ 3] In October 1986, Jordahl and Associates negotiated the MIDA bond financing for the Black Building. At that time, Dr. Georgie Burt, Helen Dillard, and Fargo each owned separate tracts of land which collectively comprised the Vanity Parking Lot. To provide additional parking for the MIDA bond project, Fargo leased its parcel of the Vanity Lot (the City Lot) to Jordahl, and Jordahl assigned its interest in that lease to Black Building Associates, the MIDA bond developer for the project.

[¶ 4] A MIDA bond document defined the "project" as the acquisition and renovation of land and buildings and included an attached exhibit that described the property as the Black Building, the Elm Tree Parking Lot, and the Vanity Parking Lot. The property described in that attached exhibit, including the Vanity Parking Lot, was copied in subsequent MIDA bond documents describing the project and is the source of the mistake in this action.

[¶ 5] Although Jordahl only had a leasehold interest in the Vanity Parking Lot, Jordahl executed a warranty deed which copied the property description from the MIDA bond documents and purported to convey the Black Building, the Elm Tree Parking Lot, and the Vanity Parking Lot to Black Building Associates. As required by law for MIDA bond financing, Black Building Associates then executed a warranty deed purporting to convey the same property to Fargo, and Fargo leased the property back to Black Building Associates with an option to purchase after the MIDA bond was retired.

[¶ 6] In April 1990, Black Building Associates defaulted on the MIDA bond and assigned its interest in the project to the mortgage holder, First Trust Company. In September 1993, D.T.L. purchased First Trust's interest in the project. In November 1993, Fargo executed a quit claim deed, which was prepared by an officer of D.T.L., conveying Fargo's interest in the project to D.T.L.

[¶ 7] In September 1994, Fargo sued D.T.L. to reform the quit claim deed. Fargo

alleged the Vanity Parking Lot was mistakenly included in the description of the project's real property. Fargo sought reformation of the quit claim deed and back rent for the City Lot from November 1993. The trial court reformed the quit claim deed and ordered D.T.L. to pay Fargo $35,337.50 in back rent and $1,250 in monthly rent for the remainder of the lease of the City Lot. D.T.L. appealed.

[¶ 8] D.T.L. contends Fargo's action for reformation accrued when the MIDA bond financing documents were drafted in 1986 and is barred by the six-year statute of limitations in N.D.C.C. § 28–01–16.

[¶ 9] Fargo sought reformation of a quit claim deed involving an interest in real property. In *Diocese of Bismarck Trust v. Ramada, Inc. et al.*, 553 N.W.2d 760, 764–766 (N.D.1996), we recently held the ten-year statute of limitations in N.D.C.C. § 28–01–15(2) applies to contract actions affecting the title to real property. That decision controls the statute of limitations issue in this case. We hold Fargo's 1994 lawsuit against D.T.L. is governed by the ten-year statute of limitations in N.D.C.C. § 28–01–15(2) and is timely, regardless of whether the limitation period began to run in 1986 when the MIDA bond documents were prepared or in 1993 when the quit claim deed was executed.

[¶ 10] D.T.L. raises several issues regarding reformation of the quit claim deed. D.T.L. asserts the trial court erred in considering parol evidence about mistake, because, as a condition precedent to the introduction of parol evidence, Fargo failed to prove by clear and convincing evidence the quit claim deed did not express the parties' intent.

[¶ 11] Section 32–04–17, N.D.C.C., provides the statutory framework for the equitable remedy of reformation:

When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice

to rights acquired by third persons in good faith and for value.

[¶ 12] In *Ell v. Ell*, 295 N.W.2d 143, 149–50 (N.D.1980) (citations omitted), we discussed the application of the parol evidence rule to a reformation action:

The parol evidence rule is not a rule of evidence, but rather, it is a rule of substantive law.... The parol evidence rule is codified, in part, in ... Section 9–06–07 [N.D.C.C., which] provides that a written contract supersedes all prior or contemporaneous oral agreements or conditions concerning the subject matter of the contract, even though the contract is not required to be in writing.... [I]t is well-established that parol evidence is admissible in a suit to reform a written instrument on the grounds of fraud or mutual mistake of the parties. Parol evidence is admissible not only to establish the alleged fraud or mistake, but also to correct the instrument to conform to the agreement or intention of the parties....

Thus, reformation is a limitation on the parol evidence rule which is necessary to reach a just result. Any evidence which tends to show the true intention of the parties, whether it be evidence of conduct or declarations of the parties extrinsic to the contract or documentary evidence, is admissible.

... parol evidence is admissible in an action for reformation of a contract to establish fraud or mutual mistake as well as to show the true intention of the parties. To hold otherwise would render the parol evidence rule an instrument of the very fraud or mistake it was designed to prevent. In the absence of such a salutary exception to the parol evidence rule, it would be virtually impossible to establish the grounds relied on for reformation....

[¶ 13] We reject D.T.L.'s argument about parol evidence. Under *Ell*, in a reformation action any parol evidence which tends to show a mistake or the parties' true intent is admissible.

[¶ 14] D.T.L. argues Fargo was not entitled to reformation of the quit claim deed

because it failed to prove a mistake by clear and convincing evidence.

[¶ 15] In *Ell,* 295 N.W.2d at 150 (emphasis in original), we also said:

The burden of proof rests on the party who seeks reformation to prove that the written instrument does not fully or truly state the agreement that the parties intended to make.... Further, ...

"[P]arol evidence of an alleged mutual mistake as a basis for the modification of a written instrument must be clear, satisfactory, specific and convincing, and a court of equity will not grant the high remedy of reformation even upon a mere preponderance of the evidence, but only upon the certainty of error...."

Each case involving the reformation of a contract on grounds of fraud or mutual mistake must be determined upon its own particular facts and circumstances. In considering whether or not a mutual mistake exists, the court can properly look into the surrounding circumstances and take into consideration *all* facts which disclose the intention of the parties.

[¶ 16] In *Wehner v. Schroeder,* 354 N.W.2d 674, 678 (N.D.1984), we said we will not reverse a trial court's finding that the evidence of mutual mistake was clear and convincing unless the finding is clearly erroneous. A finding is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if an appellate court is left with a definite and firm conviction a mistake has been made. *American Ins. Co. v. Midwest Motor Express, Inc.,* 554 N.W.2d 182, 185 (N.D.1996).

[¶ 17] Here, there was extensive documentary evidence describing the MIDA bond project. Fargo initially leased the City Lot to Jordahl to provide parking for the project, and the parties did not intend the project to include a fee interest in the City Lot. However, an initial MIDA bond document mistakenly defined the project to include the City Lot and that description was copied in subsequent MIDA bond documents, including warranty deeds conveying the project to Fargo and Fargo's "conduit" lease of the project back to Black Building Associates under N.D.C.C. § 40–57–03(3). Under the mortgage provisions of N.D.C.C. § 40–57–03(6), Fargo did not have the power to obligate itself "except with respect to the project, except as otherwise provided by section 40–57–19" which is not applicable here.

[¶ 18] The trial court found D.T.L. was put on notice about "serious questions as to the status of the City Lots title" by several recorded documents, including the lease between Fargo and Jordahl, an indenture of trust agreement which defined the MIDA bond financing "project" and included a description of the City Lot in an attached exhibit, and the warranty deed from Jordahl to Black Building Associates which purported to convey title to the Vanity Parking Lot although Jordahl was a stranger to title to that property.

[¶ 19] The court also found that, prior to purchasing the project, D.T.L. was put on notice of a possible defect in title to the City Lot by several documents in its possession, including a real estate representation agreement between First Trust and Coldwell Banker which did not list the City Lot, a title insurance policy on the project which said the policy only insured a leasehold interest in the City Lot, financial data sheets which indicated First Trust had been making lease payments to Fargo for the City Lot, and an addendum to Fargo's lease with Jordahl which would have allowed D.T.L. to drop park-and-shop requirements for the City Lot and would have been unnecessary if Fargo had intended to convey more than a leasehold interest to D.T.L. The court found the recorded and unrecorded documentary evidence raised red flags about the underlying title of the City Lot.

[¶ 20] Although Fargo owned the City Lot and could have conveyed its title to the land, grants by a public body are construed in favor of the grantor. N.D.C.C. § 47–09–13. The property was not offered for public sale. *See* N.D.C.C. § 40–11–04. Under the statutory scheme for MIDA bond financing, Fargo did not "have the power to obligate itself except with respect to the project." N.D.C.C. § 40–57–03(6). The MIDA bond project did not include a fee interest in the City Lot, and the evidence supports a finding

Fargo executed the quit claim deed under the mistaken belief it was transferring only its interest in the project. We are not left with a definite and firm conviction the trial court made a mistake in finding the quit claim deed was executed under a mistaken belief about the scope of the transaction. We conclude the trial court's finding of mistake is not clearly erroneous.

[¶ 21] D.T.L. contends the mistake was caused by Fargo's own lack of care.

[¶ 22] Negligence is not a bar to reformation if there has been a mistake in reducing an agreement to writing. *Bismarck Trust*, 553 N.W.2d at 769–770; *Wehner v. Schroeder*, 354 N.W.2d at 679. Here, the mistake occurred because of an erroneous description of the MIDA bond project and the continuation of that mistake in subsequent MIDA bond documents. Fargo was not guilt free in its involvement in the process. However, we decline to hold, as a matter of law, that Fargo's lack of care precludes reformation of the deed. *See Bismarck Trust*, 553 N.W.2d at 770.

[¶ 23] D.T.L. also argues it was protected from reformation as a good faith purchaser for value under N.D.C.C. § 32–04–07.

[¶ 24] The trial court found D.T.L. was aware, or should have been aware, of the deficiencies in the title. The trial court's finding is not clearly erroneous, and D.T.L. was not protected as a third-party good faith purchaser for value under N.D.C.C. § 32–04–07.

[¶ 25] We affirm the judgment reforming the quit claim deed.

[¶ 26] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.