1999 ND 118

**Sheila MURPHY, as Personal Representative of the Estate of Hugh R. "Red" Murphy, Plaintiff and Appellee,**

v.

**Tom MURPHY, Defendant.**

**Shirley Meyer, Personal Representative for the John Redmond Murphy Estate, and Leone Linseth and Rose Hansen, as Guardian and Conservator for Dorothy Murphy, Intervenors and Appellants.**

**No. 980147.**

Supreme Court of North Dakota.

June 23, 1999.

Rehearing Denied July 16, 1999.

Robert O. Wefald, of Bismarck, for plaintiff and appellee.

James L. Norris, of Bismarck, for intervenors and appellants.

KAPSNER, Justice.

[¶ 1] Shirley Meyer, as the personal representative for the John Redmond Murphy Estate, and Leone Linseth and Rose Hansen, as guardian and conservator for Dorothy Murphy, intervenors in an action by Sheila Murphy, as the personal representative of the Hugh R. "Red" Murphy Estate, against Tom Murphy, appealed orders dismissing their counterclaims, denying them a jury trial, and denying their motions to amend, to add parties, and to join or consolidate this case with another case. We affirm the orders of the trial court.

I.

[¶ 2] On October 18, 1994, Sheila Murphy, as the personal representative of the Estate of Hugh R. "Red" Murphy (Red), filed a complaint against Tom Murphy alleging the estate and Tom owned certain land as tenants in common, each owning an undivided one-half interest. Sheila requested partition of the land's surface estate, leaving the mineral estate undivided. Tom answered contending the property was owned by a partnership between himself and Red. Tom demanded a jury trial, and sought a judgment partitioning both the surface estate and the mineral estate.

[¶ 3] On September 29, 1995, John Redmond Murphy (Jack) and Dorothy Murphy (Intervenors) filed a motion to intervene as defendants under N.D.R.Civ.P. 24. They answered Sheila's complaint alleging all but 400 acres of the land was owned by the Murphy Brothers Ranch Partnership (Partnership) consisting of themselves, Red, and Tom. The Intervenors asserted they were defrauded by Red and his attorney into selling Red and Tom 400 acres of land on November 13, 1992. The Intervenors requested the court order the 400 acres of land returned to them and in exchange they would return the $51,035 paid by Red and Tom for the land. The Intervenors' counterclaim also alleged they had a 22% partnership interest in the land sought to be partitioned and that they "transferred their assets to the Partnership and/or allowed the Partnership to use their property in exchange for the agreement that [they] would have a 22% interest in the Partnership for the rest of their lives." The Intervenors sought judgment providing, in part:

1. That Jack and Dorothy are entitled to the 400 acres of property that they were defrauded into deeding to Red and Tom on November 13, 1992;

2. That the complaint requesting partitioning of the property ... be dismissed and that such property be determined to be Partnership property which Jack and Dorothy have a 22% Partnership interest in for the rest of their lives;

3. A judgment for noneconomic damages for pain, suffering, inconvenience, mental anguish, emotional distress, loss, injury to reputation, humiliation and other nonpecuniary damages in a reasonable sum but not less than fifty thousand dollars.

On November 14, 1995, the trial court granted the motion to intervene and filed the Intervenors' answer and counterclaim.

[¶ 4] In July 1997, Sheila moved for summary judgment arguing the Interve-nors' claims against Red's estate should be dismissed with prejudice because the claims should have been filed in the probate action. She contended the Intervenors were barred from bringing the action under the non-claim statute, N.D.C.C. § 30.1–19–03. The Intervenors answered the motion asserting it would have been impossible for them to file a claim "on or before August 28, 1994 in Red's Estate for fraud since the interveners had not even discovered that they had a cause of action for fraud against Red's Estate until just before September 28, 1995."

[¶ 5] On August 25, 1997, the trial court ordered "Shirley Meyer, as Personal Representative for John Redmond Murphy's Estate, be substituted for Jack Murphy and Leone Linseth and Rose Hansen, as Guardian for Dorothy M. Murphy, be substituted for Dorothy Murphy." In November 1997, the trial court denied the Intervenors' motion to amend their complaint, join additional defendants, and join or consolidate the action with a legal malpractice action commenced in Stark County.

[¶ 6] On November 3, 1997, the trial court denied Sheila's summary judgment motion, without comment upon the substance of the motion. After denying the motion, the trial court stated it "determined, and counsel have agreed, that this case is to be bifurcated with the fraud and partnership claims being tried first to the jury, and with the partition action to be tried later to the Court as an equitable action."

[¶ 7] During the pretrial hearing on November 14, 1997, the trial court "call[ed] off the jury" relying on this court's decision in *Sargent County Bank v. Wentworth*, 547 N.W.2d 753 (N.D.1996). The trial court cited the reasoning from *Wentworth*, at 761 (citations omitted), which states:

A party has no absolute right to a jury trial in an equitable action, nor is a party entitled to a jury trial when the party raises legal defenses denominated

as counter-claims. Even when the counter-claim seeks monetary damages, there is no entitlement to a jury trial if the damage claim is incidental to and dependent upon a primary claim where a jury trial is not allowed. A claim for fraud on the court is in the nature of an equitable action for relief from the judgment. Therefore, the Wentworths were not entitled to a jury trial on their claim for fraud on the court.

[¶ 8] Following a bench trial, on February 13, 1998, the trial court issued an order dismissing the Intervenors' claims with prejudice and ordered the partition trial to be scheduled. On March 16, 1998, the Intervenors filed a motion for certification under N.D.R.Civ.P. 54(b) to allow them to appeal from the order dismissing their claims with prejudice. The Intervenors requested a stay of the partition action until this appeal was complete. On May 1, 1998, the trial court granted the motion for certification and ordered a stay in the partition proceedings. The Intervenors appealed on May 6, 1998.

## II.

[¶ 9] The Intervenors contend the trial court erred in denying them their constitutional right to a jury trial. We disagree.

[¶ 10] North Dakota Const. art. I, § 13 preserves the right to a jury trial in all cases in which it was a right at common law. *General Elec. Credit Corp. v. Richman*, 338 N.W.2d 814, 817 (N.D. 1983). "Whether a party is entitled to a jury trial depends on whether the case is an action at law or a claim in equity." *Barker v. Ness*, 1998 ND 223, ¶ 6, 587 N.W.2d 183. There is no absolute constitutional right to a jury trial in an equitable proceeding absent an express statutory provision. *Id.*

[¶ 11] An action to partition or quiet title to property is an equitable action, for which there is no right to trial by jury. *Dakota Bank & Trust Co. v. Federal Land Bank*, 437 N.W.2d 841, 844 (N.D.

1989). Whether a party is entitled to a jury trial is complicated when the pleadings seek both legal and equitable relief. *Landers v. Goetz*, 264 N.W.2d 459, 462 (N.D.1978). "In an equitable action the bringing in of a third party whose claim is legal in nature entitles the third party to a jury trial." *Id.* A party is not entitled to a jury trial on a damage claim that is merely incidental to and dependent on an equitable claim. *General Elec. Credit Corp. v. Richman*, 338 N.W.2d 814, 818 (N.D.1983). Thus, there is no right to a jury trial on a claim or counterclaim for damages if it is incidental to or dependent upon a primary claim for which a jury trial is not allowed. *See, e.g., Sargent County Bank v. Wentworth*, 547 N.W.2d 753, 761 (N.D.1996).

### A.

[¶ 12] Although not denominated as such in the pleadings, the first relief sought by the Intervenors is rescission of their transfer of 400 acres to Red and Tom on November 13, 1992. They assert they are entitled to rescission because the transfer was induced by fraud. Whether an action for rescission is legal or equitable in nature depends upon the facts and the actions taken by the party prior to bringing the action. The Intervenors argue the trial court erred in denying them a jury trial. However, we hold their action for rescission was equitable in nature and the Intervenors were not entitled to a jury on that claim.

[¶ 13] A plaintiff who elects to rescind a contract may choose to bring a claim in equity to cancel the contract under N.D.C.C. § 32–04–21. *Barker v. Ness*, 1998 ND 223, ¶ 10, 587 N.W.2d 183. "Alternatively, the plaintiff may bring an action at law based upon an election to rescind and offer to restore under N.D.C.C. § 9–09–04." *Id.* A plaintiff must give the defendant notice of the rescission and must promptly make an offer to restore to strictly comply with the requirements of a rescission action at law under N.D.C.C. § 9–09–04. *Id.* at ¶ 12.

[¶ 14] In *Barker v. Ness*, 1998 ND 223, ¶ 3, 587 N.W.2d 183, Barker, a home purchaser, brought suit against the vendors, Ness and Smith, alleging they had fraudulently misrepresented the condition of the home. After a bench trial, the trial court concluded the sale of the home should be rescinded. *Id.* at ¶ 4. Barker appealed from the judgment arguing the trial court erred in denying her a jury trial. *Id.* at ¶ 5. This court noted whether Barker was entitled to a jury trial was dependent on whether the case was an action in law or a claim in equity. *Id.* at ¶ 6. Barker's complaint asked the trial court to cancel a contract for the sale of a home and return ownership of the home to Ness and Smith. *Id.* at ¶ 21. There was "nothing in the record indicating tender of a notice of rescission and offer to restore sufficient under N.D.C.C. § 9–09–04 to effect a rescission at law." *Id.* Thus, we concluded Barker sought a rescission of the sale of the house in equity. *Id.* "Because Barker was pursuing a claim in equity, with other alleged damage claims incidental to and dependent on the claim for rescission, we necessarily h[e]ld the district court did not err when it refused to grant Barker a jury trial." *Id.* A rescission action at law is based upon a party's prior unilateral rescission, whereas an action in equity seeks to have the court terminate the contract and order restoration. *Omlid v. Sweeney*, 484 N.W.2d 486, 490 (N.D.1992).

[¶ 15] In this case, the record before the trial court established that no offer to restore the purchase price was made by the Intervenors before the action was begun. The action must, therefore, be an action in equity arising under N.D.C.C. § 32–04–21. Equitable actions for rescission under N.D.C.C. § 32–04–21 may be brought "[i]n any of the cases mentioned in section 9–09–02." This includes actions in which consent of a party was attained by fraud.

[¶ 16] A bench trial was conducted on this issue and the trial court dismissed the Intervenors' claim stating: "I can find no fraud in the purchase of 400 acres from Jack. The 1989 appraisal was done in anticipation of Jack's Medicaid qualification and the 1992 sale was conducted and completed with all parties thereto in agreement that the purchase price represented fair market value." The Intervenors were not entitled to a jury on this issue. The trial court's finding that there was no fraud is supported by the record. The dismissal of the Intervenors' claim for rescission was proper.

B.

[¶ 17] The Intervenors contend the trial court erred in denying them a jury trial to decide whether the land sought to be partitioned by Sheila Murphy, other than the 400 acres for which the Intervenors sought rescission, was partnership property. The Intervenors asserted a 22% interest in the partnership. The land at issue was subject to a quiet title action in which judgment was entered on June 6, 1991. The quiet title action identifies Red and Tom as plaintiffs. Jack Murphy was a named defendant in the quiet title action. The trial court declared Red and Tom Murphy "owners in fee simple absolute" of the property and ordered "that the defendants, and each of them, be and they are hereby forever debarred and enjoined from further asserting" claims against the property.

[¶ 18] Sheila Murphy asserts the quiet title judgment bars the Intervenors' claim to this land as a matter of law. N.D.C.C. § 32–17–13 limits a defendant in a quiet title action to defend "after trial and within one year after the rendition of judgment therein, but not otherwise." The Intervenors brought their claim asserting the property was partnership property on September 29, 1995, over four years after judgment was entered in the quiet title action. Thus, Jack's claim against the property is barred as a matter of law under N.D.C.C. § 32–17–13.

[¶ 19] Although Dorothy may have been aware of the quiet title action, she was not a named party and is not bound by the decision. However, there is no evidence in the record to suggest Dorothy actually had an interest in the property independent of Jack's interest. With the exception of the warranty deed conveying 400 acres of land to Red and Tom in 1992, the evidence shows without dispute that Dorothy's name does not appear in any of the deeds in the record. The trial court stated:

> First, I am strictly applying the Parol Evidence Rule as there has been no evidence presented which would warrant disregard for that Rule. All of the real property documents indicate Red's and Tom's individual ownership as tenants in common and not as partners. The partnership of Red and Tom, therefore, owned no real property. No real estate involved in this lawsuit was acquired with partnership funds. This result is consistent with the multiple deeds, Tom's initial answer to Interrogatory No. 3, the quiet title judgment, the Title Standard and the only written partnership agreement itself.

The burden of proof is on the party who alleges a mistake to establish by competent evidence that the written instrument does not fully or truly state the agreement the parties had intended to make. *See City of Fargo v. D.T.L. Properties, Inc.,* 1997 ND 109, ¶ 15, 564 N.W.2d 274. Dorothy failed to meet her burden of introducing competent evidence to overcome the parol evidence rule and dispute Red's and Tom's ownership as tenants in common. The trial court did not err in denying the Intervenors a jury trial on the issue. The trial court's dismissal of the Intervenors' claims to this land was proper.

## C.

[¶ 20] The Intervenors contend the trial court erred by denying them a jury trial to decide whether Red Murphy and his attorney tried to defraud the Intervenors out of their lifetime 22% interest in the Murphy Brothers Partnership property. Such a claim may be based in contract or in tort for which a claimant is ordinarily entitled to a jury trial. *See Delzer v. United Bank of Bismarck,* 527 N.W.2d 650, 653–54 (N.D.1995).

[¶ 21] The Intervenors claim Red, Tom, and their parents, the Intervenors, formed a partnership in which the Intervenors would have a 22% interest for the rest of their lives. The record shows Red and Tom signed a partnership agreement on February 15, 1991. With respect to land, it provided: "This partnership shall not own land or minerals, although the Partners do own some land as tenants in common." The Intervenors did not sign the partnership agreement. No mention is made of Jack in the agreement, although with respect to Dorothy, it provides as follows:

> No Partners shall receive any salary from the partnership and the only compensation to be paid shall be as hereinafter provided: The gross proceeds from the sale of livestock of the partnership, shall go 74% to the partnership account, 22% to Dorothy Murphy, 3% to Hugh R. "Red" Murphy and 1% to Tom Murphy. All other profits and all losses shall be allocated equally between the two partners each year.

The partnership agreement further provided that upon the death of a partner, if the surviving partner and the personal representative of a deceased partner could not agree upon a purchase price for the deceased partner's interest, the partnership "shall be terminated."

[¶ 22] The essence of the Intervenors' claim with regard to their asserted partnership interest is that Red and Tom breached an agreement with their parents, the Intervenors, in one or more of the following ways: (1) they failed to convey land held as tenants in common to the partnership; (2) they failed either by breach of contract or fraudulently to allocate profits and losses generated by the

partnership to the Intervenors in accordance with their asserted 22% interest; (3) they failed to provide for a partnership to continue during the lives of the Intervenors; and (4) they dissolved the partnership.

[¶ 23] The record reflects that in a separate action, Red had, on March 25, 1994, filed a complaint for dissolution, accounting, termination, and winding up of the partnership between himself and Tom. The complaint in the dissolution action alleged Red and Tom had divided the livestock, but were unable to agree on the division of the remaining partnership property. Following Red's death, a trial was held on April 23, 1996, where the sole issue was "whether a 1972 Oliver 155 Tractor, Gas Engine ... and a 1982 Hesston 6450 Self Propelled Swather 18' Draper Head, with no cab and a cracked head and a gas engine ... was partnership property, and if partnership property, what disposition should be made." The trial court in the dissolution action issued its findings of fact, conclusions of law, and an order on May 6, 1996, finding the tractor and swather were partnership property with Red's estate and Tom each owning one-half. No other partnership property was discussed in the trial court's findings in that case.

[¶ 24] Sheila Murphy asserts the Intervenors' partnership claims are barred by the Intervenors' failure to bring the claim in the probate proceeding. Red Murphy died on May 5, 1994. Sheila is the personal representative of Red's estate, with letters of administration issued to her dated May 16, 1994. Under North Dakota's nonclaim statute, N.D.C.C. § 30.1–19–03:

1. All claims against a decedent's estate which arose before the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

a. Within three months after the date of the first publication and mailing of notice to creditors if notice is given in compliance with section 30.1–19–01; provided, claims barred by the nonclaim statute at the decedent's domicile before the first publication for claims in this state are also barred in this state.

b. Within three years after the decedent's death, if notice to creditors has not been published and mailed.

"A primary objective of a nonclaim statute is the expeditious and orderly processing of decedents' estates. Timely filing of claims against a decedent's estate is mandatory, and if not timely filed, the claims are barred as a matter of law." *See generally* 31 Am Jur 2d *Executors and Administrators* § 634 (1989) (internal citations omitted).

[¶ 25] In compliance with N.D.C.C. § 30.1–19–01, Sheila Murphy published a notice to creditors in the Dunn County Herald on May 28, June 4, and June 11, 1994. Consequently, the last day for filing "claims" under N.D.C.C. § 30.1–19–03 was August 28, 1994. N.D.C.C. § 30.1–01–06(7), however, states the term "claims" does not include "demands or disputes regarding title of a decedent ... to specific assets alleged to be included in the estate." The Intervenors allege they were defrauded out of their lifetime 22% interest in the Murphy Brothers Partnership property which includes land, and therefore, their partnership claim is not a claim within the context of the nonclaim statute. As noted above, however, the trial court's decision on the ownership of the land was appropriately determined.

[¶ 26] This court analyzed North Dakota's nonclaim statute in *Matter of the Estate of Joseph M. Powers v. Powers*, 552 N.W.2d 785 (N.D.1996). Joseph Power

died on March 31, 1992. *Id.* at 786. His will was admitted to probate on April 7, 1992. *Id.* A notice and information to heirs and devisees was served on Edward Power, Joseph's nephew, on April 14, 1992, and a notice to creditors was published three times in April and May of 1992. *Id.* On November 9, 1995, more than three years following Joseph's death, the personal representative petitioned the trial court for an order approving the final account, determining Joseph's testacy status, and distributing the estate. *Id.*

[¶ 27] Edward appeared at the motion hearing claiming he had worked for Joseph's construction company, and Joseph had promised him that his profit-sharing trust certificates would be paid in full after the business was sold. *Id.* Edward asserted he was entitled to $75,317.16, the value of his trust certificates. *Id.* Edward also claimed he was entitled to $10,000 for the appraised value of a 1983 Ford van that he co-owned with Joseph. *Id.* Edward introduced a 1994 motor vehicle registration card listing himself as the sole owner of the van. *Id.* The Estate contended the last day to file a claim against the Estate was July 28, 1992, and therefore, Edward's claim was untimely by more than three years. *Id.* The trial court ruled Edward's claims were time barred by the nonclaim statute and Edward appealed. *Id.*

[¶ 28] This court decided the trial court correctly ruled that Edward's claim to the profit-sharing trust certificates was time barred. *Id.* N.D.C.C. § 30.1–19–03 "bars all creditor claims against a decedent's estate if they are not presented within three months after the date of first publication and mailing of notice to creditors, or within three months after the claim arises if it arises at or after the decedent's death." *Id.* We explained: "[e]ven if the claim need not have been brought against the company rather than the Estate, and we construed Edward's claim as a contract action based upon Joseph's alleged promise to him, Edward's request clearly constitutes a creditor's claim against the Estate to

which the non-claim statute applies." *Id.* at 786–87.

[¶ 29] However, Edward's claim based on his alleged ownership of the van was not barred by the non-claim statute. *Id.* at 787. By introducing the registration certificate, "Edward made at least a colorable showing that he owned the van in joint tenancy with Joseph." *Id.* Upon the death of a joint tenant, the title to the joint property vests immediately in the surviving joint tenant. *Id.* The interest passes by right of survivorship and does not pass through a will because the deceased joint tenant has no right to devise. *Id.* Further, for purposes of the nonclaim statute under N.D.C.C. § 30.1–01–06(5) the term "claims" does not include disputes regarding title to specific assets alleged to be in the estate. *Id.* Thus, the nonclaim statute was inapplicable to Edward's alleged joint tenancy interest in the van. *Id.*

[¶ 30] The record in this case reflects that on August 3, 1994, Jack and Dorothy filed a claim against Red's estate asserting the estate owed them $36,752.14 from the sale of livestock. On January 12, 1995, a stipulation for settlement of the claim was filed stating Red's estate "owed Dorothy Murphy the claimed amount of $36,752.14, which is one-half of the total amount owed by Murphy Bros. Ranch Partnership for the 1992, 1993, and 1994 calf crop." Red's estate was ordered to pay Dorothy the full amount of the claim.

[¶ 31] Except for the claim to a share of the proceeds of the sale of livestock, the record does not reflect that the Intervenors have made a "colorable showing" to specific assets alleged to be included in the estate. Therefore, the claims of the Intervenors regarding their asserted partnership interests, to the extent not previously fully and finally litigated in other proceedings, would arise in tort or contract to which the non-claim statute is applicable. The Intervenors' claim to partnership proceeds from cattle has been adjudicated. Other claims are barred by the nonclaim

statute.[1] The trial court did not err in denying the Intervenors a jury trial on the remaining partnership claims. The trial court correctly dismissed these claims.

### D.

[¶ 32] The Intervenors also contend the trial court erred in failing to award them noneconomic damages for "pain, suffering, inconv[en]ience, mental anguish, emotional distress, loss, injury to reputation, humiliation and other nonpecuniary damages." In *Sargent County Bank v. Wentworth*, 547 N.W.2d 753, 761 (N.D. 1996), this court noted there is no right to a jury trial on a claim or counterclaim for damages if it is incidental to or dependent upon a primary claim for which a jury trial is not allowed. The Intervenors' claim for noneconomic damages is necessarily incidental to and dependent upon their primary fraud and partnership claims. We therefore conclude the trial court did not err in dismissing the Intervenors' damages claim.

### III.

[¶ 33] The Intervenors contend the trial court erred in denying their motions to amend their complaint to allege a breach of fiduciary duty, to add additional defendants, and to join or consolidate this case with a legal malpractice action they filed in another county. "A motion to amend a complaint lies within the sound discretion of the trial court, and we will not disturb the court's decision denying the motion absent an abuse of discretion." *Wishnatsky v. Huey*, 1997 ND 35, ¶ 11, 560 N.W.2d 878. This court reviews a trial court's decision on a motion to join parties under the abuse of discretion standard as well. *In re Estate of Hugh R. Murphy*, 554 N.W.2d 432, 438 (N.D.1996). Consolidating pending actions under N.D.R.Civ.P. 42(a) is within the trial court's discretion. *Heller v. Production Credit Ass'n of Mi-*

*not*, 462 N.W.2d 125, 127 (N.D.1990). We conclude the trial court did not abuse its discretion in ruling as it did on the Intervenors' motions.

### IV.

[¶ 34] The orders denying the Intervenors' demand for a jury trial, dismissing their claims, and denying their motion to amend, to add parties, and to join or consolidate this case with another case are affirmed.

[¶ 35] MARING, J., and RALPH R. ERICKSON, D.J., concur.

[¶ 36] RALPH R. ERICKSON, D.J., sitting in place of SANDSTROM, J., disqualified.

VANDE WALLE, Chief Justice, dissenting.

[¶ 37] I dissent.

[¶ 38] This case was scheduled for a jury trial. The trial court, on its own initiative and without briefing by the parties, denied the jury trial and determined the case would be tried before the court. The trial court's explanation for canceling the jury trial was short and over simplified and its reasoning and analysis undeveloped. The majority now advances a web of theories involving equity and time barred legal actions to justify the trial court's decision many of which were not advanced by the parties nor articulated or relied upon by the trial court.

[¶ 39] "On appeal our review should not simply be to seek reasons to justify the denial of trial by jury . . . ." *Land Office Co. v. Clapp–Thomssen Co.*, 442 N.W.2d 401, 407 (N.D.1989) (VandeWalle, J., dissenting). *See also* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil 2d* § 2302.1 (1995) ("At a minimum [*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d

---

1. It appears the Intervenors may be entitled to a jury trial on some partnership issues against Tom; however, the Intervenors did not seek relief from Tom in their counterclaim and consequently this opinion does not address that issue.

988 (1959), and *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962)] lend impetus toward finding a right to trial by jury in doubtful cases."); 8 James Wm. Moore, *Moore's Federal Practice* § 38.10[1][a] (3d ed. 1998) ("It has been held that the right to jury trial under the Seventh Amendment should be liberally construed, and that when there is doubt, the balance is tilted in favor of a jury trial.")

[¶ 40] North Dakota Const. art. I, § 13 preserves the right to a jury trial as it existed when the Constitution was adopted, and thus preserves the right to a jury trial in all cases in which it was a right at common law. *General Elec. Credit Corp. v. Richman*, 338 N.W.2d 814, 817 (N.D.1983). Blackstone viewed trial by jury as "the glory of the English law" and "the most transcendent privilege which any subject can enjoy." III William Blackstone, *Commentaries* *379. This Court has also exhibited a high regard for trial by jury. "This State has been more liberal than most in construing the guarantee of jury trial." *Dobervich v. Central Cass Pub. Sch. Dist. No. 17*, 283 N.W.2d 187, 190 (N.D.1979). This "indicates the high regard with which we view the right to a jury trial." *General Elec. Credit Corp. v. Richman*, 338 N.W.2d 814, 818 (N.D.1983).

[¶ 41] But whether a party is entitled to a jury trial as a matter of right depends on whether the case is one at law or one in equity. *Barker v. Ness*, 1998 ND 223, ¶ 6, 587 N.W.2d 183; *Farm Credit Bank v. Rub*, 481 N.W.2d 451, 458 (N.D.1992). "In an equitable proceeding there is no absolute right to a trial by jury." *Barker*, at ¶ 6. On the other hand, "[t]he right to a trial by jury in actions at law is a basic and fundamental part of our system of jurisprudence." *General Elec. Credit Corp. v. Richman*, 338 N.W.2d 814, 817 (N.D.1983). "An action at law for the recovery of money only is triable to a jury as a matter of right." *Id.* "Actions for partition and quiet title are equitable actions." *Dakota Bank & Trust Co. v. Federal Land Bank*, 437 N.W.2d 841, 844 (N.D.1989). One who elects to rescind a contract may choose to bring a claim in equity under N.D.C.C. § 32–04–21, or may bring an action at law under N.D.C.C. § 9–09–04. *Barker*, at ¶ 10. The trial court did not decide which theory of rescission the Intervenors were pursuing, and in the posture in which this case is presented, including equitable issues as well as issues at law, we should not decide that issue either.

[¶ 42] "The problem of deciding when a party is entitled to a jury trial is complicated when the pleadings seek relief which is partly legal and partly equitable." *Landers v. Goetz*, 264 N.W.2d 459, 462 (N.D. 1978). "In an equitable action the bringing in of a third party whose claim is legal in nature entitles the third party to a jury trial." *Id.* "Generally, where both damages and an injunction are sought, the parties are entitled to a jury trial as to the damage claim unless it is merely incidental to and dependent on the right to an injunction." *General Elec. Credit Corp. v. Richman*, 338 N.W.2d 814, 818 (N.D.1983). There is no right to a jury trial on a claim or counterclaim for damages if it is incidental to or dependent upon a primary claim for which a jury trial is not allowed. *Sargent County Bank v. Wentworth*, 547 N.W.2d 753, 761 (N.D.1996); *Farm Credit Bank v. Rub*, 481 N.W.2d 451, 458 (N.D. 1992); *First Nat'l Bank & Trust Co. v. Brakken*, 468 N.W.2d 633, 635–6 (N.D. 1991). "A court does not err in denying a jury trial where the monetary award sought is incidental to, or intertwined with, equitable relief. It does err when it denies a jury trial because of its determination that *legal issues* in the case are merely incidental to equitable ones." *Golden v. Kelsey–Hayes Co.*, 22 C.C.P.A. 744, 73 F.3d 648, 661 (6th Cir.1996). "Whenever the issues are so interrelated that a decision in the nonjury portion might affect the decision of the jury portion, the jury portion is to be tried first, since otherwise the party entitled to the jury trial would

be deprived of part or all of his right to a jury trial." *Landers v. Goetz*, 264 N.W.2d 459, 463 (N.D.1978).

[¶ 43] In *Landers v. Goetz*, 264 N.W.2d 459 (N.D.1978), Landers sued McClures to determine title to land, and sued McClures and Goetz for damages. This Court recognized an action to quiet title is an equitable action for which one is not entitled to a jury trial, as of right, but, nevertheless, said the parties were entitled to a jury trial: "But when Goetz not only answered, setting forth a basis for dismissal of the complaint, but also counterclaimed, setting forth a claim for money damages, his counterclaim asked for relief which was strictly legal, as opposed to equitable, and entitled either party to demand a trial by jury as of right. Suits for damages are suits for legal relief." *Id.* at 462.

[¶ 44] Nor is the fact an equitable proceeding is involved preclude a jury trial in all instances. Even though there is no absolute right for a jury trial in an equitable action, "a trial court may submit, in its discretion, factual questions to an advisory jury." *Sargent County Bank v. Wentworth*, 500 N.W.2d 862, 872 (N.D.1993). In *Sprenger v. Sprenger*, 146 N.W.2d 36, 37, Syllabus ¶ 4, (N.D.1966), this Court, in construing N.D.R.Civ.P. 39, held:

> In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury, or the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right. Rule 39(c), N.D.R.Civ.P.

Under Rule 39, F.R.Civ.P., from which N.D.R.Civ.P. 39 was derived, "the court always may order a jury trial with the consent of both parties or the court may try an issue with an advisory jury." 9 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 2331 (1995). The purpose of Rule 39, F.R.Civ.P., "is to make possible the complete fusion of law and equity in one form of civil action." *Id.* It "permits the time-saving trial of jury and nonjury issues at one time." *Id.* "The issue, not the action, is the basic unit for determining jury-triability under Rules 38 and 39, and the rules contemplate that in the one action some issues will be tried to the court and others will be tried to the jury." *Id.* Significantly, " 'when a case contains claims triable to a jury and claims triable to the court that involve common issues of fact, the jury's resolution of those issues governs the entire case.' " *Kolstad v. American Dental Ass'n*, 108 F.3d 1431, 1440 (D.C.Cir.1997), quoting *Bouchet v. National Urban League, Inc.*, 730 F.2d 799, 803 (D.C.Cir. 1984). Otherwise, parties would be denied their right to a jury trial, and there would exist the possibility of unseemly and unnecessary conflict between a jury's findings and the trial court's findings.

[¶ 45] Sheila Murphy's complaint against Tom Murphy sought equitable partitioning of real property allegedly owned by the parties as tenants in common. Tom Murphy's answer asserted the land was owned by a partnership of he and Hugh R. "Red" Murphy. The Intervenors' answer alleged all but 400 acres of the land was owned by a partnership consisting of Red, Tom, Jack and Dorothy Murphy. The Intervenors' counterclaim alleged Michael Maus and Red Murphy defrauded them into selling 400 acres of land for less than its worth, demanded its return, and offered to return the purchase price. The counterclaim also alleged the Intervenors owned a 22 percent interest in the partnership. The counterclaim sought a judgment providing the Intervenors were entitled to the 400 acres, dismissal of the partition complaint, and damages. Although the complaint sought equitable relief, the Intervenors' counterclaim is legal in nature and is not incidental to or dependent upon the equitable relief sought in the complaint. There are issues of fact common to the legal and equitable claims.

[¶ 46] Surveys consistently indicate the public's trust and confidence in our judicial system is at its highest in the public's

regard for the jury system. Judges should not seek reasons to deny jury trials when they are requested. I have previously expressed concern over a court's apparent position that jury trials are the exception rather than the rule. *Land Office Co. v. Clapp–Thomssen Co.*, 442 N.W.2d at 407 (VandeWalle, J., dissenting).

[¶ 47] Judges should not be afraid the case will "get out of control" if heard by a jury nor should judges foster a belief that we are the only ones really competent to determine the factual issues in the case.

[¶ 48] Assuming the majority's convoluted analysis somehow produces a conclusion the appellants were not entitled to a jury trial as a matter of right, a conclusion with which I obviously do not agree, the trial judge should have allowed the jury trial under N.D.R.Civ.P. 39(c). In the circumstances of this case where a jury was demanded and scheduled, none of the parties objected and the court's sua sponte decision to derail the jury proceedings was based on cryptic reasoning at best, the public can only assume judges believe juries are incapable of deciding complex cases. Perhaps it is our fear lawyers cannot adequately present a complex case or we, as judges, cannot adequately instruct the jury in such a case which causes us to seek reason why a matter should not be tried by a jury. If so, I believe those fears are largely unfounded. We can do better than to leave the parties and the public with this impression.

[¶ 49] NEUMANN, J., concurs.